GINETTE PADILLA COLÓN, RAMÓN SÁNCHEZ FLORES y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos, peticionarios, *v.* CENTRO GRÁFICO DEL CARIBE, INC. y RAFAEL TORRES PACHECO, recurridos.

*Número:* CC-96-218 *Resuelto:* 4 de marzo de 1998

---

954

*Manuel Durán Rodríguez* y *Carlos M. Vergne Vargas*, de *Limeres Vergne & Durán*, abogados de la parte peticionaria; *Esperanza Esteban Rodríguez*, de *Esteban & Asociados*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

Hoy nos corresponde interpretar la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. sec. 467 *et seq.*, conocida como la Ley para la Protección de Madres Obreras (en adelante la Ley Núm. 3), y disponer que la peticionaria de epígrafe tiene derecho a la protección ofrecida por ese estatuto. Resolvemos, además, que la peticionaria recibirá los beneficios de la Ley Núm. 3, *supra*, o los de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*), de acuerdo con aquella de esas leyes que más le beneficie.

I

El 12 de noviembre de 1993 la Sra. Ginette Padilla Colón, su esposo, Sr. Ramón Sánchez Flores, y la sociedad

legal de gananciales constituida por ambos, presentaron demanda sobre despido injustificado, discrimen por sexo y daños y perjuicios contra el Centro Gráfico del Caribe, Inc., y su principal oficial ejecutivo y dueño mayoritario de sus acciones, el Sr. Rafael Torres Pacheco. En esencia, los demandantes alegaron que el 14 de abril de 1993 la codemandante Padilla Colón fue despedida de su empleo en la corporación codemandada por razón de su embarazo. Argumentaron, además, que la pérdida de su embarazo, según ocurrió en mayo de 1993, fue ocasionada por el despido injustificado y que dicho despido le causó daños en una cuantía no menor de doscientos cincuenta mil dólares ($250,000). Por estos fundamentos la codemandante solicitó ser indemnizada por los daños sufridos de conformidad con la Ley Núm. 3, *supra.*

La parte demandada contestó la demanda negando las alegaciones relativas al discrimen por razón de embarazo y de sexo, al igual que el despido injustificado y los daños. Alegó afirmativamente que desconocía del embarazo, que la codemandante incumplió con sus deberes y funciones desde mucho antes de estar embarazada y que ésta no fue despedida, sino que abandonó el empleo.

Ante la imposibilidad de probar una relación causal entre el alegado despido y los abortos,[1] el 19 de abril de 1995 las partes demandantes desistieron de su reclamación de daños por los abortos que sufrió la señora Padilla Colón y por los daños y las angustias mentales relacionadas con éstos.

Luego de celebrar una vista en su fondo el 22 de septiembre de 1995, el Tribunal de Primera Instancia, Sala Superior de Bayamón, dictó sentencia resolviendo que la codemandada había sido tácitamente despedida de su em-

---

[1] Se desprende de los hechos encontrados por el tribunal de instancia que mientras se desempeñaba como empleada de la parte recurrida, la peticionaria quedó embarazada en octubre de 1992, pero que seis (6) semanas después sufrió un aborto. Para los primeros días de 1993, la peticionaria quedó embarazada nuevamente, pero abortó de nuevo en mayo de 1993. Apéndice, págs. 031–035. (Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 12 de noviembre de 1993, págs. 2–6.)

pleo sin causa justificada para ello, por lo que procedía el pago de la mesada bajo la Ley Núm. 80, *supra*, al concluir que "[e]l patrono descargó adecuadamente el peso de la prueba para establecer que el embarazo de la Sra. Padilla no fue la razón de su despido". Apéndice, pág. 040. Al respecto, concluyó el tribunal que el mal genio del señor Torres Pacheco y su falta de comunicación con la codemandante afectaron la cantidad y calidad del trabajo realizado por ésta, lo que causó su despido.

Inconforme con tal determinación del tribunal de instancia, los demandantes apelaron al Tribunal de Circuito de Apelaciones mediante recurso presentado el 6 de noviembre de 1995. En éste alegaron, en síntesis, que incidió el tribunal de instancia al no aplicar al caso de autos la Ley Núm. 3, *supra*, toda vez que, según determinó ese foro, la señora Padilla Colón fue despedida injustificadamente mientras se encontraba embarazada por, entre otras causas, la reducción en calidad y cantidad de su trabajo.

El 25 de abril de 1996, el Tribunal de Circuito de Apelaciones dictó sentencia confirmatoria, en la que resolvió que la correcta norma de derecho aplicable a los hechos probados en el caso de autos es la dictada por la Ley Núm. 80, *supra*, y no la que surge de la Ley Núm. 3, *supra*; ello en deferencia al tribunal de instancia en cuanto a su dictamen de que la falta de comunicación entre la codemandante y el patrono, producida por la actitud y conducta de éste, fue la causa del despido de la señora Padilla Colón. La notificación de la sentencia fue archivada en autos el 2 de mayo de 1996.

El 17 de mayo de 1996 las partes demandantes oportunamente presentaron una moción de reconsideración ante el tribunal a quo, la cual fue denegada por el foro apelativo mediante resolución emitida el 23 de mayo de 1996 y notificada el 24 de mayo del mismo año.

Persiguiendo la revisión de dicha sentencia, las partes peticionarias presentaron ante este Tribunal una petición

de *certiorari* el 24 de junio de 1996.([2]) La expedición del recurso fue denegada mediante resolución emitida el 9 de agosto de 1996. La peticionaria solicitó nuestra reconsideración el 23 de agosto de 1996, pero sostuvimos nuestra determinación original por medio de Resolución de 20 de septiembre de 1996, notificada el 23 de septiembre de 1996. El 26 de septiembre de 1996 la peticionaria presentó una segunda Moción de Reconsideración, la cual nos movió a expedir el auto de *certiorari* solicitado mediante Resolución de 25 de octubre de 1996.

Acuden los peticionarios ante nos con los siguientes señalamientos de error:

A. Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que aunque la copeticionaria Padilla fue despedida injustificadamente no era acreedora a los remedios establecidos en Ley para la Protección de Madres Obreras.
B. Erró el Tribunal de Circuito de Apelaciones al resolver que no procedía la reclamación de la peticionaria bajo la Ley para la Protección de Madres Obreras porque, aún cuando el despido fue sin justa causa, el patrono demostró que éste no fue discriminatorio, como si se tratara de una reclamación bajo la Ley 100 y en contravención a la letra clara de la Ley y lo resuelto por este Honorable Tribunal en *Rivera Á[g]uila v. K-Mart de P.R[.]*, 123 D.P.R. 599 (1989). Petición de *certiorari*, pág. 5.

En síntesis, a través de sus señalamientos de error, los peticionarios arguyen que incidió el Tribunal de Circuito de Apelaciones al resolver que no resultaba de aplicación al caso de autos la Ley Núm. 3, *supra*. Sostienen éstos que una vez el tribunal de instancia determinó que el despido de la señora Padilla Colón fue injustificado, la aplicación de dicha ley era mandatoria, resultando inmaterial toda prueba relativa a motivos o intenciones discriminatorias por parte del patrono. Fundamentan su contención en la

---

([2]) Conforme a la Regla 4(b) de Transición sobre la Aplicación del ahora vigente Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A, resultan de aplicación al presente recurso tanto la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22 *et seq.*), según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, como el actual Reglamento de este Tribunal, según aprobado el 25 de abril de 1996.

Sec. 4 de la Ley Núm. 3, *supra*, 29 L.P.R.A. sec. 469, y los pronunciamientos formulados en torno a ésta por este Foro en el caso de *Rivera Águila v. K-Mart de P.R.*, 123 D.P.R. 599 (1989). Perfeccionado el recurso, pasamos a examinar esos planteamientos.

## II

■ Nuestra Constitución le garantiza al trabajador el recibir "igual paga por igual trabajo" y el disfrutar de protección "contra riesgos irrazonables para su salud o integridad personal en su trabajo o empleo". Así también se ordena:

> Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley. Art. II, Sec. 16, Constitución de Puerto Rico, *supra.*

■ La Sec. 1 del Art. II de la Carta de Derechos de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, prohíbe el discrimen por razón de sexo. Esa disposición de rango constitucional dispone de la manera siguiente:

> La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana. Art. II, Sec. 1, Const. de Puerto Rico, *supra*, pág. 257.

Además, la práctica de discriminar por razones de sexo ha sido proscrita en el ambiente laboral mediante la adopción de varias leyes pertinentes, como son: la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155 *et seq.*); la Ley

Núm. 3, *supra*; la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1321 *et seq.*); la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*

■ La Sec. 4 de la Ley Núm. 3 (29 L.P.R.A. sec. 469) declara la ilegalidad del despido por razón de embarazo. Exponemos el texto del referido artículo a continuación:

*Sec. 469. Protección de madres obreras—Despido por embarazo, prohibido*
*El patrono no podrá, sin causa justa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo.*
(a) *Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento, incurrirá en responsabilidad civil* por una suma igual al doble del importe de los daños que cualquiera de los actos antes mencionados haya causado a la trabajadora, o por una suma no menor de cien dólares ($100.00) ni mayor de mil dólares ($1,000.00) a discreción del tribunal si no se pudieran determinar daños pecuniarios o el doble de éstos si montaran a una suma menor de cien dólares ($100.00).
La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta sección. (Énfasis suplido.)

Sobre el particular, el comentarista Ruy N. Delgado Zayas sostiene que: "La Ley expresamente dispone que el patrono no podrá despedir sin justa causa a la mujer embarazada. Establece, además, que no se entenderá como justa causa el menor rendimiento en el trabajo por efectos del embarazo." R.N. Delgado Zayas, *Aspectos fundamentales de la ley para proteger a las madres obreras*, XII (Núm. 44) Revista del Trabajo 11, 19 (1984).

En relación con lo dispuesto en la Sec. 2 de la Ley Núm. 3, *supra*, este Tribunal estableció lo siguiente en *Rivera Águila v. K-Mart de P.R.*, supra, pág. 609:

La Ley Núm. 3, *supra*, forma parte de un esquema trazado por el Estado para ofrecerle a la mujer obrera una mayor garantía contra el discrimen en el trabajo por razón de sexo. Me-

diante la Sec. 4 de la Ley Núm. 3, *supra*, se colocó a la mujer embarazada en una clasificación especial distinta a los demás empleados. Se reconoció que, por razón de su condición, el rendimiento en el trabajo podía quedar afectado durante el período de gestación y que era necesario brindarle una protección mayor que tomara en consideración la situación muy particular de la mujer obrera embarazada. Para atender esta realidad la Sec. 4 de la Ley Núm. 3, *supra*, "varió la norma en cuanto al contenido ... de justa causa [para el despido]", *Schneider v. Tropical Gas Company, Inc.*, 95 D.P.R. 626, 629 (1967). No sólo prohibió al patrono el despedir de su empleo sin justa causa a una mujer embarazada, sino que también excluyó del concepto justa causa el menor rendimiento por razón del embarazo. "Este menor rendimiento se refiere, no s[ó]lo al que se produce en términos cuantitativos, sino [también] al que afecta la calidad del trabajo realizado." R.N. Delgado Zayas, *Aspectos fundamentales de la ley para proteger a las madres obreras*, XII (Núm. 44) Rev. del Trabajo 11, 19 (1984).

En *Rivera Águila v. K-Mart de P.R.*, supra, págs. 609–610, interpretamos que la Ley Núm. 3, *supra*, le brinda a la mujer embarazada una protección más extensa que la brindada al trabajador por La Ley Núm. 100, *supra*, ya que esta última requiere que el patrono haya actuado discriminatoriamente al determinar el despido. Véanse, además: *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 53 (1983); *Odriozola v. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 502–503 (1985).

Además, en *Rivera Águila v. K-Mart de P.R.*, supra, pág. 610, resolvimos lo siguiente sobre el desfile de prueba en una acción instada al amparo de la Ley Núm. 3, *supra*:

Al amparo de la Ley Núm. 3, *supra*, una vez entablada una acción por la obrera, mediante la cual reclamó resarcimiento por haber sido despedida de su empleo sin justa causa mientras estaba embarazada, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido. Es al patrono, que opone como defensa el haber mediado justa causa para el despido, a quien le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. El peso de la prueba se desplaza de la parte demandante recurrente hacia el demandado recurrido, y es sobre éste que recae el *onus probandi*. Arts. 2 y 8 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185b y 185h; *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 546 (1979). En

reclamaciones al amparo de la Ley Núm. 3, *supra*, surge, pues, una presunción de despido injustificado que el patrono viene obligado a rebatir. Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV. Es al patrono al que le corresponde persuadir al juzgador de la no existencia del hecho presumido: el despido injustificado. *Hawayek v. A.F.F.*, 123 D.P.R. 526 (1989).

■ Como vemos, mediante la Sec. 4 de la Ley Núm. 3, *supra*, la Asamblea Legislativa pretende brindar una protección amplia a la mujer obrera embarazada. Para cumplir con el propósito discutido, la Ley Núm. 3, *supra*, limita el concepto de "justa causa" para un despido de esta índole.([3]) Se estableció que, en los casos en que la causa de acción emana de alegaciones por violación de la Ley Núm. 3, *supra*, es aplicable una presunción de que la mujer embarazada fue despedida de su empleo sin justa causa. La ley dispuso, además, que una merma en el rendimiento laboral de la mujer por razón de su embarazo no constituye justa causa para su despido.

■ El requisito esencial para la aplicación de la Ley Núm. 3, *supra*, es que la mujer haya sido despedida durante su embarazo; ante ese hecho, le corresponde a la parte demandada el peso de probar que había justa causa, según la ley define ese concepto, para terminar la relación obrero-patronal.

### III

El tribunal de instancia proveyó en su sentencia el siguiente marco, el cual es descriptivo de la situación fáctica de este pleito:

Estamos ante una situación de tirantez entre patrono y empleada que lleva el patrono a ofender a su empleada cuando ésta disminuye la calidad de su trabajo de forma no significa-

---

([3]) En términos generales, en *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 543 (1979), definimos que, según su aplicación a la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*), se entiende justa causa para el despido aquella que "tiene su origen no ya en el libre arbitrio del patrono, sino en razón vinculada a la ordenada marcha y normal funcionamiento de la empresa".

tiva y cuando no le comunica situaciones de vital importancia producto del pobre y amenazante ambiente de trabajo creado por el propio patrono. Apéndice, pág. 041.

 Ante la ausencia de indicio alguno de que el tribunal de instancia incurriera en manifiesto error, prejuicio, parcialidad o pasión al aquilatar la evidencia desfilada, no intervenimos con la apreciación de la prueba realizada por el foro sentenciador. Véanse: *Quintana Tirado v. Longoria*, 112 D.P.R. 276 (1982); *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443 (1985); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987).

Ahora bien, al someter los hechos determinados por el tribunal de instancia al esquema jurídico creado por la Ley Núm. 3, *supra*, entendemos que los acontecimientos que dieron paso al despido de la peticionaria fundamentan su protección al amparo de esa ley.

En el caso de autos, es un hecho incontrovertido que la señora Padilla Colón estaba embarazada al momento de su despido, cumpliendo así con el requisito básico de la Ley Núm. 3, *supra*. No obstante, el tribunal de instancia determinó que el patrono presentó prueba suficiente y convincente para derrotar la presunción que establece esa ley, de que la peticionaria fue despedida por razón de su embarazo. No estamos de acuerdo. El patrono tenía que probar que el despido estuvo justificado para rebatir dicha presunción.

Sobre el particular, encontró el tribunal de instancia que:

[Se debe] resolver si el despido fue uno motivado por la condición de embarazo de la demandante. Resolvemos que no. El patrono descargó adecuadamente el peso de la prueba para establecer que el embarazo de la Sra. Padilla no fue la razón de su despido. El mal genio del Sr. Torres Pacheco, la falta de comunicación por él generada, la baja en la calidad y en la cantidad de trabajo generado por la demandante fueron las causas del despido. Apéndice, pág. 040.

Este análisis es defectuoso. La cuestión que ha de ser resuelta no es si el despido fue motivado por la condición

de embarazo de la demandante; la cuestión es si, estando embarazada la demandante, el patrono la despidió por causa justificada. El tribunal de instancia señaló, como causas del despido de la señora Padilla Colón, la baja en calidad y cantidad del trabajo generado por ésta, pero atribuyó tal disminución en la eficiencia del trabajo de la peticionaria a los incidentes creados por la falta de comunicación habida con su patrono, generada por la conducta y actitud hostil de éste. Para adentrarnos en detalles más específicos sobre los hechos que llevaron al despido de la peticionaria, notamos la siguiente determinación del tribunal de instancia:

> Durante [el] me[s] de febrero de 1993, la relación entre patrono y empleada se deterioró significativamente producto de una serie de incidentes y de cierta falta de comunicación entre la demandante y el Sr. Torres Pacheco. La prueba estableció claramente que, a partir de febrero de 1993, la Sra. Padilla tuvo que asumir no sólo las tareas de su puesto de "contadora", sino aquellas de otros empleados que habían renunciado a la compañía.
> Sin duda, surgieron una serie de incidentes menores que afectaron la cantidad y, sobre todo, la calidad del trabajo de la demandante. ... Si algo quedó obvio a la percepción del Tribunal, es que el Sr. Torres Pacheco es una persona del mal genio, que utiliza comúnmente palabra[s] soeces y que intimidaba a la demandante. No puede solicitar mejor comunicación un patrono que tiene una actitud amenazante para sus empleados; en este caso, el costo de la comunicación se traducía en un agravio. El propio Sr. Torres Pacheco fue el causante de la mala comunicación que le imputa a la demandante. Apéndice, págs. 039–040.

De lo expuesto se desprende claramente que el patrono carecía de justa causa para despedir a la peticionaria.(4) El tribunal sentenciador fue de la impresión

---

(4) El tribunal de instancia encontró que la peticionaria cometió ciertos errores en el desempeño de sus tareas como empleada del recurrido. El tribunal entendió, además, que ya que el señor Torres Pacheco le suplicó a la peticionaria que no abandonara el trabajo, a pesar de conocer su estado de embarazo, éste no tenía una intención de despedirla. Eso porque el tribunal de instancia encontró que es improbable que "la misma persona que hoy le solicita [a la peticionaria] que no abandone el trabajo, a pesar de conocer de su embarazo, mañana le induzca a que abandone el empleo por razón de su embarazo". Apéndice, pág. 041. No obstante, el tribunal

que la peticionaria fue despedida por dos (2) razones: (1) una merma en la productividad de la empleada y (2) el mal genio de su patrono. Como expusimos anteriormente, la Ley Núm. 3, *supra*, explícitamente dispone que una disminución de la productividad de la empleada no puede interpretarse como causa que justifique la terminación de su empleo. Por otro lado, el estado de ánimo de un patrono, su disposición grosera o su mal genio ciertamente no puede constituir justa causa para decretar el despido de una empleada.

Basándonos en las determinaciones de hecho del tribunal de instancia, rechazamos la interpretación que hace dicho foro de la Ley Núm. 3, *supra*, y su aplicación al cuadro fáctico ante nuestra consideración. Según lo demostrado ante el foro de instancia, la parte recurrida no controvertió la evidencia de despido injustificado. Por esa razón, ya que la peticionaria fue despedida sin justa causa, sus derechos, según concedidos por la Ley Núm. 3, *supra*, fueron violados, por lo que procede su compensación al amparo de esa ley.

## IV

Una vez hecha la determinación de que a la parte peticionaria le ampara la Ley Núm. 3, *supra*, y habiéndose considerado que el despido de la trabajadora embarazada fue injustificado, debemos determinar cuáles son los beneficios que le corresponden.

La Ley Núm. 3, *supra*, establece en lo pertinente, que todo patrono que despida sin justa causa a una mujer embarazada, incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños que el despido haya causado a la trabajadora, o por una suma no menor de cien dólares ($100) ni mayor de mil dólares ($1,000) a discreción del tribunal si no se pudieran determinar daños pecu-

---

encontró que esas situaciones fueron principalmente causadas por la actitud del recurrido Torres Pacheco, que creaba una atmósfera tensa en el lugar del trabajo.

niarios, o el doble de éstos si montaran a una suma menor de cien dólares ($100). La empleada tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los antes establecidos. 29 L.P.R.A. sec. 469.

La Ley Núm. 80, *supra*, establece como indemnización el sueldo correspondiente a un (1) mes, así como una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio. 29 L.P.R.A. sec. 185a.

La Ley Núm. 3, *supra*, incluye los daños sufridos por la trabajadora embarazada de forma ordinariamente más amplia que los remedios que concede la Ley Núm. 80, *supra*. Los sueldos dejados de recibir por razón del despido quedan comprendidos, entre otros, dentro de los daños, aparte del derecho a la reposición en el empleo que se concede bajo la primera de dichas leyes, pero no por la segunda.

El conceder una indemnización bajo las dos (2) leyes en cuestión penalizaría al patrono por un mismo acto —el despido injustificado. En estos casos, el tribunal de instancia concederá el remedio que proceda bajo una u otra ley, a base de lo que sea más beneficioso para la trabajadora, según la prueba, pero la concesión de indemnización bajo la Ley Núm. 3, *supra*, excluirá la concesión de indemnización bajo la Ley Núm. 80, *supra*, y lo mismo ocurrirá a la inversa.([5])

Por los fundamentos expuestos, *revocamos la sentencia emitida por el Tribunal de Circuito de Apelaciones el 25 de*

---

([5]) Ahora bien, si ya se ha concedido un remedio dentro del mismo pleito bajo cualesquiera de estas leyes, lo que procede no es desestimar la acción en relación con la otra, sino atender dicha reclamación. De ésta proceder y el obrero probar que le corresponde una cuantía mayor en concepto de daños, entonces hay que rebajarle a la compensación mayor la cantidad previamente concedida bajo la otra ley. De esta forma se mantiene la exclusividad del remedio sin perjudicar los derechos del obrero y se fomenta la política pública de promover la concesión rápida de remedios económicos en casos laborales.

No obstante, en ningún caso se interpretará lo anteriormente señalado como una venia al fraccionamiento de las causas de acción en los pleitos en los que se reclama bajo distintas leyes laborales. Véanse: *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988); *Capó Sánchez v. Srio. de Hacienda*, 92 D.P.R. 837 (1965).

*abril de 1996 y se devuelve el caso al tribunal de instancia para que continúen los procedimientos de manera conforme a esta decisión.*

El Juez Asociado Señor Rebollo López disintió sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Negrón García.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Asociado Señor Negrón García.

Para entender cabalmente la cuestión jurídica ante nos, es menester tener un cuadro completo de todos los hechos pertinentes del caso de autos, que no aparecen relatados en detalle en la opinión de la mayoría del Tribunal.

En este caso, la empleada demandante comenzó a trabajar para su patrono el 9 de octubre de 1991, con un sueldo de $1,000 mensuales. Se le contrató para ocuparse de los asuntos de contabilidad de la compañía. Trece meses más tarde, el 22 de noviembre de 1992, la empleada sufrió un aborto, que le requirió guardar varios días de reposo. Al regresar a su trabajo, el 2 de diciembre de 1992, el patrono le aumentó el salario a $1,200 mensuales y le dio un bono de Navidad. La demandante fue la única persona empleada por el patrono que recibió tal bono.

Varias semanas más tarde, por razones desconocidas, los datos de la operación de una de las empresas del patrono se borraron de su sistema computarizado y le correspondió a la demandante la tarea de entrar dichos datos al sistema nuevamente. Esta situación tuvo la consecuencia de atrasar la auditoría de la empresa, que era necesaria para que ésta pudiese presentar las planillas correspondientes de contribución sobre ingreso. Además, el retraso de la auditoría provocó que recayese una sentencia millonaria en contra de la corporación.

*Todo lo anterior sucedió sin que la demandante le comunicase lo acontecido a su jefe superior, el principal oficial ejecutivo y dueño mayoritario de las acciones de la empresa.* Al enterarse del asunto, el jefe referido reaccionó con mucho coraje y le imputó por escrito a la demandante su falta de comunicación sobre asuntos de vital importancia para la empresa.

Ante esta situación, la demandante se afectó emocionalmente y, previa consulta a su médico, se ausentó del trabajo por enfermedad. El médico le recomendó descanso y una consulta con un sicólogo.

A raíz de su ausencia y luego de varias llamadas telefónicas, el jefe aludido pudo comunicarse con la demandante, quien le informó, por primera vez, que estaba embarazada otra vez y que estaba pensando no volver a trabajar. Entonces, el patrono le comunicó a la demandante que su labor en la oficina era muy importante y que le solicitaba encarecidamente que volviese a trabajar. *Se comprometió a ayudarla y protegerla durante su embarazo e insistió en que la demandante volviera a la oficina.*

El 15 de febrero de 1993, la demandante se reintegró a su trabajo. Tuvo que asumir funciones de otros empleados de la compañía, quienes habían renunciado. Sin embargo, nuevos incidentes ocasionaron que las relaciones con su jefe se tornaran tirantes. La demandante se atrasaba en algún informe y éste la recriminaba con palabras soeces. El jefe referido alegó que semanalmente se retrasaban por lo menos cuatro (4) de los informes que debía preparar la demandante. Siguieron varios memorandos amonestándola. En otras ocasiones la demandante dejó de pagar el teléfono y cortaron el servicio telefónico; así ocurrió también con la electricidad de un edificio propiedad de la corporación. Ante la suspensión de los servicios de teléfono y electricidad, la demandante alegó falta de fondos disponibles para expedir los cheques. El jefe insistió en que la falta de comunicación le impedía producir los fondos necesarios para pagar las cuentas. La relación entre la demandante y su jefe hizo crisis y se agravó posteriormente,

cuando una ex empleada regresó a trabajar con el patrono con un salario casi igual al de la demandante, pero con menos responsabilidades.

Posteriormente, ocurrió otro incidente entre la querellante y su jefe. La compañía de seguros médicos que agrupaba a los empleados de la compañía llamó para informar que estaba dando de baja a todos los empleados de la compañía por falta de pago. Se agudizó la situación al no haber cheques impresos para efectuar de inmediato el pago. Este incidente causó una situación muy difícil entre la demandante y su jefe. Ésta alegó que la falta de pago se debió a la falta de fondos y a la falta de cheques impresos, que era una omisión de parte del jefe, fácilmente subsanable por la corporación. El jefe, a su vez, culpó a la demandante de lo ocurrido, por no haberle comunicado la falta de fondos y haber permitido que los cheques impresos se acabaran. Esta situación degeneró en una escena donde el jefe expresó a viva voz en la oficina y con palabras soeces que no quería gente como la demandante trabajando allí.

Así las cosas, la demandante *abandonó* la oficina el 14 de abril de 1993 y no regresó más.

Frente a esta situación de hechos, el foro de instancia formuló las conclusiones de derecho siguientes:

(1) Que la demandante fue *tácitamente* despedida de su empleo; es decir, que aunque la demandante fue quien voluntariamente abandonó su trabajo, bajo las circunstancias en que lo hizo debía concluirse que hubo un "despido constructivo".

(2) Que el "despido" aludido *no fue motivado por la condición de embarazo de la demandante.* Expresamente resolvió el foro de instancia que "el patrono descargó adecuadamente el peso de la prueba para establecer que el embarazo [de la empleada] no fue la razón de su despido".

(3) Que el presunto "despido" se debió al mal genio del jefe de la demandante. Expresamente resolvió el foro de instancia que existía en este caso un ambiente de trabajo pobre y amenazante creado por el propio patrono; que éste usaba palabras soeces comúnmente y que así intimidaba a la demandante; y que fue el propio jefe de la demandante "el causante de la mala comunicación que le imputa a la demandante".

(4) Finalmente, el foro de instancia concluyó que, vista toda la prueba que tuvo ante sí, la demandante había sido despedida

injustificadamente de su empleo. Señaló expresamente que "visto lo anterior, resolvemos que el despido de la demandante es uno sin justa causa".

La sentencia del tribunal de instancia se emitió luego de tres días de vista en su fondo, durante los cuales se presentó amplia prueba testifical y documental por ambas partes. En esencia, el foro de instancia rechazó la reclamación de la demandante de despido discriminatorio por razón de embarazo. Por otro lado, también rechazó las alegaciones del patrono de que no había despedido a la demandante y de que ésta había sido negligente en el cumplimiento de sus deberes. Acogió, sin embargo, la contención del patrono demandado de que si procedía algún remedio, sería el provisto por la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 1852 *et seq.*).

El Tribunal de Circuito de Apelaciones confirmó el dictamen de instancia en lo medular.([1]) Concluyó que, conforme la prueba presentada, había ocurrido un despido por una razón separada e independiente del embarazo de la demandante. Indicó que el foro de instancia había determinado "que el patrono presentó prueba suficiente y convincente para derrotar la presunción que establece la Ley para la Protección de Madres Obreras"; y que "no esta[ba] en condiciones de sustituir el criterio del tribunal a quo, por el suyo propio al evaluar la prueba presentada en el caso de autos".

Inconforme con este dictamen, la demandante vino a nos y alegó que la amparaba la Ley para la Protección de Madres Obreras, Ley Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. sec. 467 *et seq.*), debido a que ésta aplicaba precisamente si existe un despido injustificado cuando la persona así despedida es una mujer embarazada. *En otras palabras, adujo expresamente la demandante que aunque el patrono no hubiese tenido motivos o intención de discriminar contra ella por razón de su embarazo,* si el despido

---

([1]) El foro apelativo modificó la sentencia de instancia en cuanto a costas y honorarios de abogado.

fue injustificado, aplica la Ley Núm. 3, *supra*, por encontrarse ella en estado de embarazo al ocurrir el despido. Es este planteamiento el que tenemos ante nos en el caso de autos.

## I

La Mayoría, en su opinión, acoge el planteamiento de la demandante. *Por un lado, de manera expresa, la Mayoría acepta los hechos del caso según fueron determinados por el foro de instancia.* Admite que no hay indicio alguno de que el tribunal incurriera en prejuicio, parcialidad o error manifiesto al aquilatar la prueba que tuvo ante sí en el caso de autos. *La Mayoría admite, pues, que el despido en el caso de autos no fue motivado o causado por la condición de embarazo de la demandante.* Por otro lado, sin embargo, la Mayoría también concluye que aplica aquí la ley especial, que se legisló precisamente para prohibir el despido por embarazo. Resuelve así la Mayoría por entender que en casos de despido de mujeres embarazadas, la única forma que tiene el patrono de obviar las severas sanciones de la Ley Núm. 3, *supra* —que pueden incluir hasta pena de cárcel por un término no menor de treinta (30) días— es mediante la prueba *de que el despido estuvo justificado.* De modo que, conforme al criterio de la Mayoría, aunque en un caso como el de autos *no exista discrimen alguno por razón de embarazo,* si el despido fue injustificado, se aplican las graves penas de la Ley Núm. 3, *supra*, por el mero hecho de que la empleada estuviese embarazada.

La Mayoría apoya su decisión en el caso de autos en unas expresiones normativas nuestras emitidas en *Rivera Águila v. K-Mart de P.R.*, 123 D.P.R. 599 (1989). Si bien es cierto que hicimos tales expresiones allí, debe tenerse en cuenta que dicho caso trataba escuetamente con una situación muy distinta a la que encaramos en el caso de autos. En *Rivera Águila v. K-Mart de P.R.*, supra, el despido se debió a que la empleada demandante había incurrido en un menor rendimiento en la capacidad y calidad de su tra-

bajo por razón de su embarazo, por lo que su despido era claramente contrario a lo dispuesto por la Ley Núm. 3, *supra*. Las expresiones normativas nuestras allí se hicieron en el contexto de un claro error de parte del foro de instancia, que había determinado que el despido aludido estaba justificado. Una situación como la del caso de autos no se examinó de modo alguno en *Rivera Águila v. K-Mart de P.R.*, supra. No es justo resolver que expresiones emitidas en aquel contexto aplican también a un caso como el de autos, en el cual la situación de hechos y el dictamen de instancia son enteramente distintos a los de dicha decisión. Nuestra discusión del marco normativo en *Rivera Águila v. K-Mart de P.R.*, supra, enfocaba el problema concreto que nos concernía allí, que era muy diferente al que está presente en el caso de autos.

En las circunstancias del caso de autos, quizás puede resolverse que la empleada fue *tácitamente* despedida sin justa causa, mediante una interpretación claramente liberal y expansiva de la Ley Núm. 80, *supra*. Lo que no puede concluirse es que la situación concreta ante nos se rige bajo la Ley Núm. 3, *supra*. *Frente al hecho tajante y decisivo de que no hubo acto o decisión alguna de parte del patrono motivado por la condición de embarazo de la empleada, aplicar aquí las severas sanciones de la Ley Núm. 3, supra, constituye, en mi criterio, una distorsión de los propósitos claros de esa legislación.*

La Ley Núm. 3, *supra*, fue aprobada en 1942, antes que la Ley Núm. 80, *supra*, antes que la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146 *et seq.*) y, ciertamente, antes que la Ley de Derechos Civiles federal. Su propósito claro fue proteger a la obrera embarazada, para que no sufriese riesgos en el trabajo *ocasionados específicamente por razón de su estado de preñez.* La Ley Núm. 3, *supra*, partía de la premisa de que *aunque la condición de embarazo le podía impedir a una mujer rendir una jornada de trabajo ordinaria, ello no debía dar lugar a que por tal razón sufriese sanciones en su empleo.* La protección principal que dispuso dicha ley fue la de proveer *períodos de*

*descanso mandatorios* para tales obreras, de cuatro semanas antes y después del alumbramiento, durante los cuales ésta *no tenía que trabajar, y no podía despedírsele de su empleo por su ausencia durante tales períodos.* El patrono no podía despedir a la mujer embarazada, si ésta ejercía la opción que la ley le daba, de ausentarse del trabajo durante los períodos de descanso aludidos. *Tal ausencia no constituía justa causa para el despido.*

En 1942 el legislador fue aun más lejos para proteger a la obrera embarazada. Dispuso, además, que ésta tampoco podía ser despedida del empleo si, *por razón del embarazo*, incurría en un rendimiento menor en su trabajo. *Tal rendimiento menor tampoco constituía justa causa.*

La disposición de la Ley Núm. 3 aludida, sobre justa causa, fue interpretada por este Tribunal, con meridiana claridad, por voz del eminente Juez Luis Blanco Lugo, en *Schneider v. Tropical Gas Company, Inc.*, 95 D.P.R. 626 (1967). Dijimos allí que al aprobar la Ley Núm. 3, *supra*, en 1942, el legislador quiso *enmendar* el concepto de justa causa para el despido. Explicamos que para el 1942, el desempeño ineficiente o incompleto de un trabajador en su empleo constituía ya justa causa para el despido. Señalamos que para proteger a la mujer embarazada, el legislador había querido sustraer, del concepto de justa causa para el despido, el evento específico de *la disminución en el rendimiento laboral que naturalmente tiene una mujer embarazada.* Resolvimos expresamente en *Schneider v. Tropical Gas Company, Inc.*, supra, que el propósito de esta parte de la Ley Núm. 3, *supra*, era *"variar"* del modo aludido *"el contenido del concepto justa causa".*

La interpretación que este Tribunal hizo del alcance de la Ley Núm. 3, *supra*, en *Schneider v. Tropical Gas Company, Inc.*, supra, recibió expresa y clara ratificación por la Asamblea Legislativa de Puerto Rico en 1969. Citando nuestra decisión en *Schneider v. Tropical Gas Company, Inc.*, supra, el legislador enmendó ese año la disposición aludida de la Ley Núm. 3, *supra*, y por primera vez impuso severas sanciones civiles sólo para el caso en que un pa-

trono despidiese a una obrera embarazada *por el menor rendimiento laboral de ésta*. Véase el Informe de la Comisión de Trabajo del Senado de Puerto Rico sobre el P. del S. 14 de 1ro de abril de 1969, 6ta Asamblea Legislativa, 1ra Sesión Ordinaria. Al fijar por primera vez sanciones civiles por una suma igual al doble del importe de los daños causados a la trabajadora embarazada, *el legislador precisó de manera concreta y específica* qué evento daba lugar a que se incurriese en la responsabilidad civil aludida. Se dispuso taxativamente que la responsabilidad civil se incurría cuando el patrono discriminaba contra la mujer embarazada *"por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo ..."*. (Énfasis suplido.) 29 L.P.R.A. sec. 469. No se dispuso de modo alguno que tal responsabilidad civil se incurría en cualquier caso en el cual se despidiese a la mujer embarazada sin causa justificada.

A lo anterior debe añadirse que cualquier análisis *contextual* de las disposiciones vigentes de la Ley Núm. 3, *supra*, ratifica inexorablemente la interpretación de este Tribunal en *Schneider v. Tropical Gas Company, Inc.*, supra. En el primer párrafo de la disposición en cuestión, 29 L.P.R.A. sec. 469, expresamente se indica que *"[n]o se entenderá que es justa causa el menor rendimiento para el trabajo en razón del embarazo"*. (Énfasis suplido.) En el segundo párrafo se impone una severa sanción al patrono que de algún modo discrimine en contra de una trabajadora *"por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo ..."*. 29 L.P.R.A. sec. 469. Estas disposiciones son las que preceptúan de manera concreta el asunto del discrimen por embarazo. Su tenor específico revela claramente la intención legislativa particular. No aluden a cualquier despido injustificado de la empleada embarazada, sino a un solo modo de tal despido.

Por otro lado, la disposición de la Ley Núm. 3, *supra*, que dispone las sanciones penales pertinentes, 29 L.P.R.A. sec. 471, es igualmente precisa en su redacción. Se impone

una penalidad en casos de empleadas embarazadas al patrono *"que la despidiere de su trabajo por razón del embarazo"*. (Énfasis suplido.) 29 L.P.R.A. sec. 471. No se dispone penalidad alguna por despido injustificado de una mujer embarazada. Sólo se impone por la causal específica de despido por razón de embarazo.

Como puede observarse, pues, la médula de las disposiciones vigentes es la prohibición de que el patrono actúe en contra de una mujer sólo por estar embarazada, o concretamente porque su rendimiento se ha reducido por estar embarazada. *La Ley Núm. 3, supra, no dispone sanción alguna, civil o penal, si el patrono despide o discrimina contra una mujer embarazada, por algún otro motivo injustificado, que no sea el embarazo en sí o la merma en producción por razón del embarazo.*

Finalmente, debe tenerse en cuenta que en 1976, posterior a la Ley Núm. 3, *supra*, y a su medular enmienda de 1969, la Asamblea Legislativa aprobó la Ley Núm. 80, *supra*, que es la pieza de ley que trata detalladamente con el asunto de los despidos sin justa causa. *Tratándose de una ley especial posterior —que de manera abarcadora atiende lo relativo a los despidos injustificados,* conforme a conocidos principios de hermenéutica— es a ella que debe acudirse en casos de mujeres embarazadas que son despedidas por razones que no tienen que ver específicamente con su condición de embarazo o su merma en productividad por tal razón. *Díaz v. Srio. de Hacienda,* 114 D.P.R. 865, 874 (1983); *Pueblo v. López Pérez,* 106 D.P.R. 584, 586 (1977); *A.J. Tristani v. Municipio,* 76 D.P.R. 758 (1954). Sólo así cumplimos cabalmente con nuestra responsabilidad de formular una interpretación armónica de las diversas leyes *in pari materia* que aquí nos conciernen. R.E. Bernier y J.A. Cuevas, *Aprobación e interpretación de las leyes en Puerto Rico,* 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, págs. 481–485.

A la luz del indisputable historial relatado antes y de las claras normas de hermenéutica aplicables, es claro que *no* existe fundamento válido alguno para concluir que la *Ley*

*Núm. 3, supra,* prohíbe *cualquier tipo* de despido injustificado si la mujer está embarazada. *Esa ley claramente prohíbe sólo el despido por razón de embarazo y el despido por merma en la productividad mientras subsiste la condición de embarazo.* Los otros se rigen por la Ley Núm. 80, *supra,* o por la Ley Núm. 100, *supra.* La mayoría del Tribunal, sin embargo, hace caso omiso de todo lo anterior y sin ningún fundamento jurídico adecuado, por puro fíat, dispone que dicha Ley Núm. 3 aplica en cualquier caso de alegado despido injustificado de una mujer embarazada.

Por todo ello, disiento.