# 2002 DTA 135

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II DE BAYAMON

DR. JORGE L. ORTIZ MELENDEZ, *ET AL*
Apelados

v.

MUNICIPIO DE TOA BAJA, *ET AL*
Apelantes

Núm. KLAN-00-01288

San Juan, Puerto Rico, a 30 de agosto de 2002

Panel integrado por su Presidente, el Juez Arbona Lago,
y los Jueces Aponte Hernández y Urgell Cuebas

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los apelantes, Municipio de Toa Baja (Municipio) y su entonces alcalde Hon. Víctor M. Soto Santiago, nos solicitan que revoquemos la sentencia parcial dictada sumariamente el 26 de octubre de 2000 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante el referido dictamen, el tribunal declaró Con Lugar la solicitud presentada por la apelada Dra. Wanda Matos Candelaria para que vía sentencia sumaria le fueran resarcidos los salarios dejados de devengar a raíz del alegado despido discriminatorio por razón de su embarazo.

Por los fundamentos que expondremos a continuación, revocamos la sentencia apelada.

## I

La Dra. Wanda Matos Candelaria trabajaba como pediatra en el Centro de Diagnóstico y Tratamiento del Municipio de Toa Baja en virtud de un *contrato de servicios médico profesionales* cuya vigencia se extendía desde el 1 de julio de 1997 hasta el 30 de junio de 1998.

Al amparo de la cláusula sexta del contrato, ██ el 30 de diciembre de 1997, el Municipio notificó a la Dra. Matos Candelaria sobre la resolución unilateral del mismo, efectivo el 15 de enero de 1998. A esa fecha, la Dra. Matos Candelaria se encontraba en su séptimo mes de embarazo.

El 27 de febrero de 1997, la Dra. Matos Candelaria, conjuntamente con el Dr. Jorge L. Ortiz Meléndez, presentó demanda contra el Municipio de Toa Baja y su entonces alcalde Hon. Víctor M. Soto Santiago. En lo que a la apelada compete, ésta alegó violaciones a sus derechos civiles y constitucionales en la medida en que el Municipio la destituyó sumariamente del puesto que ocupaba como pediatra en el Centro de Diagnóstico y Tratamiento del Municipio; además, que su despido fue injustificado y motivado por razones discriminatorias, ya que al momento de ser despedida, la apelada se encontraba en su séptimo mes de embarazo. En consecuencia, reclamó la reinstalación a su puesto, indemnización por los daños morales y económicos ocasionados, así como el pago de licencia de vacaciones y enfermedad y bonos de navidad.

El 27 de abril de 1998, los apelantes contestaron la demanda, negando las alegaciones de la Dra. Matos Candelaria. Adujeron como defensa que la relación de trabajo entre la apelada y los apelantes se regía por un contrato de servicios médico profesionales que facultaba a cualquiera de las partes contratantes a resolverlo

unilateralmente con tan sólo una previa notificación a dichos efectos.

Tras varios trámites procesales, la apelada presentó una moción de sentencia sumaria en la que alegó que como empleada municipal estaba protegida por el Artículo 12.017(g) de la Ley de Municipios Autónomos, 21 L.P.R.A. 4567(g), que prohíbe el despido sin justa causa de la mujer embarazada y ordena la posposición de cualquier decisión que afecte la permanencia en el empleo hasta que finalice el período de licencia de maternidad.

La parte apelante se opuso a la moción de la apelada y solicitó, a su vez, que se dictara sentencia sumaria a su favor. Los apelantes refutaron el hecho de que la apelada fuera empleada del Municipio. Además, sostuvieron que el cese en la relación de trabajo se llevó a cabo de conformidad con el contrato de servicios profesionales suscrito entre las partes.

El 26 de noviembre de 2000, el tribunal de instancia dictó sentencia sumaria parcial en la que resolvió que el Municipio violó el Artículo 12.017(g) de la Ley de Municipios Autónomos, *supra*, por lo que ordenó al Municipio pagar a la Dra. Matos Candelaria "*los haberes dejados de devengar desde la fecha de la terminación [unilateral] del contrato de servicios como pediatra hasta el 30 de junio de 1998*", fecha original de vencimiento del contrato.

Inconforme, el Municipio recurre ante nos e imputa al tribunal de instancia la comisión de los siguientes errores:

*"PRIMER ERROR*

*Erró el Tribunal de Primera Instancia al intuir que el contrato entre la apelada y el Municipio compareciente es contrario al Artículo 12.006 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4556.*

*SEGUNDO ERROR*

*Erró el Tribunal de Primera Instancia al concluir que la apelada goza de la protección que brinda el Artículo 12.017 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4567.*

*TERCER ERROR*

*Erró el Tribunal de Primera Instancia al determinar que la apelada continuará en su reclamación en cuanto a la protección de otras disposiciones legales a las mujeres embarazadas y su derecho a reclamar otros daños contra los apelantes, por razón de: (1) que la apelada no tiene expectativas de continuidad en su empleo; (2) que la Ley Núm. 3 de 13 de marzo de 1942 es inaplicable a la controversia de marras, puesto que la misma no aplica al Gobierno Central ni a los Municipios como patronos."*

Oportunamente, la Dra. Matos Candelaria compareció mediante alegato, quedando el asunto sometido.

## II

La sección 1 del Artículo II de la Carta de Derechos de la Constitución de Puerto Rico prohíbe el discrimen por razón de sexo. Esa disposición de rango constitucional dispone:

*"La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana."*

El discrimen por razón de embarazo constituye una modalidad del discrimen por razón de sexo, según reconocido jurisprudencialmente. *Rivera Aguila v. K-Mart de Puerto Rico*, 123 D.P.R. 599 (1989). De modo que la prohibición contra el discrimen por embarazo quedó incorporada en la Ley Núm. 3 de 13 de marzo de 1942, conocida como la Ley para la Protección de Madres Obreras, 29 L.P.R.A. 467 *et seq.*, y en el Artículo 12.017(g) de la Ley de Municipios Autónomos, 21 L.P.R.A. 4567(g), que hoy nos ocupa.

Toda vez que el Artículo 12.017 de la Ley de Municipios Autónomos, *supra*, emplea un lenguaje similar a las disposiciones de la Ley para la Protección de las Madres Obreras, haremos extensiva la jurisprudencia interpretativa de dicha Ley al Artículo 12.017 de la Ley de Municipios Autónomos para fines de este caso en particular.

La Ley Núm. 3, *supra*, forma parte de un esquema trazado por el Estado para proveer a la mujer obrera una garantía mayor contra el discrimen en el trabajo por razón de sexo. Esta ley colocó a la mujer embarazada en una posición especial y distinta en comparación a los demás empleados. Se reconoció que, por razón de su condición, el rendimiento en el trabajo podía quedar afectado durante el período de gestación y que era necesario brindarle una protección mayor que tomara en consideración la situación muy particular de la mujer obrera embarazada. Para atender esta realidad, la sección 4 de la Ley Núm. 3, *supra*, 29 L.P.R.A. 469, varió la norma en cuanto al contenido de justa causa para el despido. No sólo prohibió al patrono el despedir de su empleo sin justa causa a una mujer embarazada, sino que también excluyó del concepto de justa causa el menor rendimiento por razón del embarazo. Este menor rendimiento se refiere, no sólo al que se produce en términos cuantitativos, sino también al que afecta la calidad del trabajo realizado. *Rivera Aguila v. K-Mart de P.R.*, 123 D.P.R. 599, 609 (1989).

Al amparo de la Ley Núm. 3, *supra*, una vez entablada una acción por la obrera, mediante la cual reclamó resarcimiento por haber sido despedida de su empleo sin justa causa mientras estaba embarazada, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido. Es al patrono, que opone como defensa el haber mediado justa causa para el despido, a quien le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. El peso de la prueba se desplaza de la obrera hacia el patrono y es sobre éste que recae el *onus probandi*. Es decir, en estos casos surge una presunción de despido injustificado que el patrono viene obligado a rebatir. Es al patrono al que le corresponde persuadir al juzgador de la no existencia del hecho presumido: el despido injustificado. *Soc. de Gananciales v. Centro Gráfico*, 144 D.P.R. 952, 960 (1998); *Rivera Águila v. K-mart de P.R.*, 123 D.P.R. 599, 610 (1989).

El requisito esencial para la aplicación de la Ley Núm. 3, *supra*, es que la mujer haya sido despedida durante su embarazo; ante este hecho, le corresponde a la parte demandada el peso de probar que había justa causa, según la ley define ese concepto, para terminar la relación obrero-patronal. En otras palabras, la cuestión que ha de ser resuelta no es si el despido fue motivado por la condición de embarazo de la demandante; la cuestión es si, estando embarazada la obrera, el patrono la despidió por causa justificada. *Soc. de Gananciales v. Centro Gráfico*, *supra*.

### III

Como se sabe, la sentencia sumaria, gobernada por la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, constituye un mecanismo procesal discrecional y extraordinario cuyo propósito es facilitar la solución justa, rápida y económica de aquellos litigios civiles que no presenten controversias genuinas de hechos importantes y pertinentes que la regla llama "*materiales*"; razón por la cual no ameritan la celebración de un juicio en su fondo y pueden adjudicarse implementando la norma de ley referente a hechos no disputados. *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994). Unicamente se concederá el dictamen sumario cuando la evidencia que presente junto a la moción, establezca con claridad la existencia de un derecho a favor de parte en el litigio. Es reiterada la doctrina al efecto de que mediante dicho mecanismo se busca obtener un remedio rápido y eficaz en casos en que queda demostrado que sólo es menester adjudicar el derecho sobre

hechos importantes y pertinentes ("*materiales*") que no están en litigio en la causa. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363, 376 (1994). De tal modo y en cumplimiento con el primer postulado del ordenamiento procesal civil, ▮ la disposición por la vía sumaria persigue aligerar la tramitación de toda causa civil, bien mediante sentencia parcial o total, sin celebrar una vista en los méritos, para adjudicar credibilidad, precisamente cuando de los documentos no refutados conste que realmente no existen controversias de hecho sobre aspectos medulares y que sólo resta aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 912; *Caquías v. Asoc. Res. Mansiones de Río Piedras*, 134 D.P.R. 181, 216 (1993); *Consejo Tit. Cond. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538, 548 (1991); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272, 279 (1990).

En tal exégesis se tomarán en consideración las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y luego de quedar claro que del conjunto consta que no hay controversia real sustancial en cuanto a ningún hecho importante y pertinente ("*material*") como queda dicho, y que también surja que como cuestión de derecho conste que también debe dictarse sentencia a favor de alguna parte en el litigio, aunque no sea ésta la que haya solicitado el remedio sumario. *Neca Mortgage Corp. v. A&W Developers S.E.*, 137 D.P.R. 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

Ante la presencia de conflictos reales y sustanciales respecto a hechos importantes y pertinentes, aun en caso de duda al respecto, el foro debe siempre resolver en contra de quien presentó la sentencia sumaria, pues el trámite de la sentencia sumaria no permite que el tribunal entonces dirima cuestiones de credibilidad sin la celebración de una vista evidenciaria plenaria. *Rivera Rodríguez v. Depto. De Hacienda*, 149 D.P.R. ___, **99 J. T.S. 144**; *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735, 781-782 (1992). Tal norma busca minimizar el peligro de que un trámite sumario pueda prestarse para despojar a un litigante de su "*día en corte*", principio elemental del debido procedimiento de ley. *Roig Commercial Bank v. Rosario Cirino*, 126 D.P.R. 613, 617-618 (1990).

Tampoco es aconsejable que los tribunales utilicen el mecanismo procesal de sentencia sumaria para resolver casos en que deban sopesarse elementos subjetivos sobre intención, propósitos mentales o factores de credibilidad. *Elías v. Chenet*, 147 D.P.R. ___, **99 J.T.S. 11**; *Rivera Rodríguez v. Depto. de Hacienda*, supra; *Piñero v. A.A.A.*, 146 D.P.R. ___, **98 J.T.S. 140**; *Soto v. Caribe Hilton*, 137 D.P.R. 294 (1994).

IV

Por estar íntimamente relacionados, discutiremos conjuntamente el primer y segundo señalamientos de error.

Mediante la sentencia parcial apelada, el tribunal de instancia resolvió por vía sumaria que el Municipio violó el Artículo 12.017(g) de la Ley de Municipios Autónomos, *supra*, toda vez que estando la Dra. Matos Candelaria embarazada, el Municipio decidió resolver el contrato de servicios médico profesionales en virtud del cual se desempeñaba como pediatra en el CDT del Municipio, sin justa causa para ello.

No obstante, somos del criterio que para poder resolver sumariamente que el Municipio violó la Ley de Municipios Autónomos, le correspondía al foro de instancia realizar ciertas determinaciones previas, que no formuló, tales como si la Dra. Matos Candelaria era empleada municipal y/o si el contrato de servicios profesionales constituia una relación obrero-patronal entre ésta y el Municipio o si, por el contrario, el contrato constituia un subterfugio para no considerarla empleada municipal.

Luego de un estudio detenido del expediente, encontramos que en los escritos de las partes se establecen versiones encontradas sobre cada uno de los hechos antes expuestos. Por un lado, el Municipio alegó que la Dra. Matos Candelaria no era empleada municipal y que la decisión de resolver el contrato consistió en una

prerrogativa otorgada a través del propio contrato de trabajo. De otra parte, la apelada sostuvo que la relación de trabajo tal como aparece descrita en el contrato tenía las características de una relación obrero-patronal, por lo que tenía que ser considerada como una empleada municipal *de facto*.

Lo anterior demuestra que existen controversias sobre hechos materiales que exigen sean resueltas antes de decidir si la Dra. Matos Candelaria está protegida por la Ley de Municipios Autónomos.

Por otro lado, en atención a que el tribunal apelado encontró probado que la terminación de la relación de trabajo fue provocada por causas discriminatorias, también vale aclarar que consideramos que existe controversia real sustancial entre las partes sobre las circunstancias de la terminación de la relación de trabajo entre la apelada y el Municipio y, también, sobre la motivación del Municipio para dicha actuación.

Si bien la apelada presentó prueba para establecer una presunción de discrimen por embarazo, el Municipio la rebatió alegando que la determinación de terminar la relación de trabajo no fue por causas discriminatorias, sino que se produjo a tenor con el contrato de servicios profesionales suscrito entre las partes, lo que la apelada controvirtió. En presencia de elementos subjetivos de intención que no pueden ser adjudicados sin la celebración de una vista evidenciaria, tampoco procede dictar sentencia sumaria en este caso.

De la misma forma que antes señalamos que el foro de instancia deberá celebrar una vista para determinar si aplica a este caso la Ley de Municipios Autónomos, también deberá dilucidar si hubo discrimen por razón de embarazo contra la apelada. En fin, se trata del tipo de controversia en que el Tribunal Supremo de Puerto Rico ha advertido que resulta inapropiado el dictar sentencia sumariamente. Se cometieron los primeros dos errores señalados.

## V

Respecto al tercer señalamiento de error, mediante el cual los apelantes nos requieren que revisemos las expresiones del tribunal de instancia a los efectos de que la apelada continuará promoviendo sus demás reclamaciones, no se cometió el error señalado. Toda vez que el tribunal de instancia todavía no ha resuelto esas otras reclamaciones a las que alegadamente la apelada tiene derecho, no nos encontramos ante una determinación revisable que nos permita resolver en los méritos. Por lo tanto, dicho planteamiento es prematuro.

## VI

Por los fundamentos antes expuestos, revocamos la sentencia parcial apelada y devolvemos el caso al foro de instancia para que continúen los procedimientos correspondientes conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 135**

**1.** La cláusula sexta del contrato dispone como sigue:

*"Cualquiera de las partes podrá rescindir el presente contrato en cualquier momento con previa notificación por escrito a la otra parte con quince (15) días de antelación a la fecha de rescisión."*

**2.** La primera regla de Procedimiento Civil dispone:

*"Estas reglas regirán todos los procedimientos de naturaleza civil ante el Tribunal General de Justicia. Se interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento."*