LIZA CRUZ SINIGAGLIA, demandante y recurrida, *v.* EMPRESAS MASSÓ, ETC., demandadas y peticionarias.

*Número:* CC-96-358          *Resuelto:* 25 de junio de 1998

*Julio Iván Lugo Muñoz*, de *Lespier & Muñoz Noya*, abogado de las peticionarias; *Rafael Toro Cubergé*, abogado de la recurrida.

## SENTENCIA

En el caso de epígrafe, el 22 de abril de 1996 el Tribunal de Circuito de Apelaciones, Circuito Regional de Ponce y Aibonito, dictó una sentencia en la cual revocó la emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 25 de octubre de 1995.

Inconforme con esta determinación, las demandadas peticionarias, Empresas Massó, Caguas Lumber Yard, Inc. y Ferretería Massó, presentaron oportunamente ante este Tribunal una petición de *certiorari*. Decidimos revisar y expedimos el recurso.

Luego de estudiar y analizar los alegatos de las partes y los documentos unidos al apéndice del recurso, *el Tribunal resolvió revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones*. Sin embargo, no hay una opinión del Tribunal. La votación de los Jueces fue la siguiente: el Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad, a la cual se unió el Juez Asociado Señor Negrón García; el Juez Asociado Señor Corrada Del Río también emitió una opinión de conformidad, pero por distintos fundamentos, y el Juez Presidente Señor Andréu García se unió a esta última; la Juez Asociada Señora Naveira de Rodón emitió una opinión disidente en la cual confirmó la dictada por el Tribunal de Circuito de Apelaciones, a la cual se unió el Juez Asociado Señor Hernández Denton, y el Juez Asociado Señor Rebollo López concurrió con el resultado de la opinión emitida por la Juez Asociada Señora Naveira de Rodón, pero no se une a ella. Por no haber una opinión del Tribunal, se emite la presente sentencia para revocar la dictada por el Tribunal de Circuito de Apelaciones.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Asociado Señor Negrón García.

En el caso de autos procede que se revoque el dictamen del Tribunal de Circuito de Apelaciones y que se reinstale el del foro de instancia.

La única cuestión ante nos, en esencia, es si el despido de una empleada de la empresa recurrente se hizo en violación de la Ley Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. sec. 467 *et seq.*) que prohíbe el discrimen en el trabajo por razón de embarazo.

Aquí el Tribunal de Primera Instancia, Sala Superior de Ponce, correctamente denegó la reclamación presentada por la empleada al amparo de dicha Ley Núm. 3. Determinó como cuestión de hecho que no había mediado ningún tipo de discrimen por razón de sexo en el despido de Liza Cruz Sinigaglia, y que dicho despido no se debió al estado de embarazo de la empleada. Concluyó, pues, que no procedía ninguna indemnización al amparo de la Ley Núm. 3, *supra.* También concluyó que como la empleada no había invocado la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*) no se podía hacer determinación alguna sobre si procedía conceder un remedio por despido injustificado. El foro apelativo revocó el dictamen referido de instancia por entender que la empleada tenía derecho a una compensación al amparo de la Ley Núm. 3, *supra.*

El Tribunal de Circuito de Apelaciones erró al revocar al foro de instancia y al resolver que el patrono, en este caso,

no había rebatido la presunción de ley de que la empleada había sido despedida por razón de su embarazo. El patrono, en el caso de autos, tenía a su favor un historial positivo de haber empleado en su empresa a un gran número de mujeres que habían estado embarazadas. Habían trabajado allí mientras estaban preñadas, dieron a luz sus hijos y regresaron al empleo, sin problema alguno. Así lo determinó expresamente el foro de instancia.

Dicho foro también determinó expresamente que Liza Cruz e Ismael Quintana fueron despedidos ambos específicamente por mantener una relación adúltera mientras trabajaban para la empresa del patrono. La situación de estos dos empleados, según el patrono, empañaba la buena imagen de la empresa. Resolvió, además, el tribunal sentenciador que el embarazo de Liza Cruz, resultante de la relación adúltera aludida, *nada tenía que ver con su despido*. Determinó que la condición de embarazo era un *hecho accidental* a la razón para el despido y que el patrono hubiese despedido igualmente a dicha empleada si se hubiera enterado de su relación adúltera con Quintana antes de que ella quedara embarazada.

Frente a estas determinaciones de hechos tan claras y contundentes, no tiene sentido jurídico alguno concluir, como decidió el foro apelativo, que el despido se hizo en violación de la Ley Núm. 3, *supra*, que prohíbe el discrimen en el empleo por razón de embarazo. Como señaláramos en nuestro disenso en *Soc. de Gananciales v. Centro Gráfico*, 144 D.P.R. 952 (1998), dicha ley sólo prohíbe el despido cuando éste se hace precisamente por el mero hecho de estar la mujer embarazada o si se hace por una merma en la producción de la mujer, que sea ocasionada por su embarazo. Ninguna de esas dos situaciones estuvieron presentes en el caso de autos, por lo que el dictamen del foro de instancia es claramente correcto y debe mantenerse.

El resultado neto de la decisión del foro apelativo es insostenible. Significaría que en una situación en la cual

un hombre y su amante son ambos despedidos, específicamente por haber sostenido una relación adúltera entre ellos, el hombre no tiene remedio alguno con respecto a tal despido, pero la mujer, por el mero accidente de su embarazo, se beneficiaría de las severas sanciones de la citada Ley Núm. 3. Como se sabe, ésta obliga al patrono no sólo a reponer a la mujer en su empleo, sino además a pagarle los salarios dejados de percibir, *más una suma igual al doble del importe de los daños causados.* Este resultado tan desigual hace patente en este caso el error de resolver que el despido de ella fue en violación de la Ley Núm. 3, *supra,* como lo hizo el foro apelativo. Claramente procede que se revoque su sentencia.

Para concluir debe señalarse, además, que como la empleada demandante no reclamó ningún otro remedio ni puso al foro sentenciador en posición de determinar si su despido se hizo sin justa causa, independientemente de la reclamación de despido por razón de embarazo, no procede que se decida en revisión si el despido fue justificado. No puede este Foro hacer dictamen alguno sobre el particular, sin base alguna en el expediente del caso o en las alegaciones ante nos o ante el foro apelativo. Tal actuación claramente *ultra vires* es sólo una racionalización para evitar admitir el significado correcto de la Ley Núm. 3, *supra.*

— o —

Opinión de conformidad emitida por el Juez Asociado Señor Corrada Del Río, a la cual se une el Juez Presidente Señor Andréu García.

"En el ejercicio de sus derechos y en el disfrute de sus libertades, toda persona estará solamente sujeta a las limitaciones establecidas por la ley con el único fin de asegurar el reconocimiento y el respeto de los derechos y libertades de los demás, *y de satisfacer las justas exigencias de la moral, del orden público*

*y del bienestar general en una sociedad democrática.*"(¹) (Énfasis suplido.)

## I

Estamos conformes con la sentencia emitida por este Tribunal en el día de hoy toda vez que, en nuestra opinión, los hechos presentados por el caso de autos son claramente distinguibles de los existentes en *Soc. de Gananciales v. Centro Gráfico*, 144 D.P.R. 952 (1998). Particularmente, en el caso de autos el Tribunal de Primera Instancia no concluyó que el despido de la recurrida fuera injustificado, como ocurrió en el caso *Soc. de Gananciales v. Centro Gráfico*, supra, sino que, por el contrario, en su dictamen la juez de instancia (Hon. Leida González Degró) señaló que el despido de la recurrida Liza Cruz Sinigaglia se produjo a raíz de la relación adúltera sostenida por ésta y un coempleado de la sucursal de las Empresas Massó en la Playa de Ponce, el Sr. Ismael Quintana. A juicio de la ilustrada sala sentenciadora, el Sr. Gildo Massó, dueño de la compañía, consideraba que dicha relación ilícita mancillaba la imagen de la empresa, lo que provocó la destitución de *ambos* empleados.(²) Dicho foro concluyó, de acuerdo con la totalidad de la evidencia presentada ante su consideración, que el patrono había rebatido satisfactoriamente la presunción de discrimen y que, por lo tanto, la recurrida no tenía derecho a los remedios de la Ley de Madres Obreras,

---

(¹) Art. 29 de la Declaración Universal de los Derechos del Hombre de 10 de diciembre de 1948, Organización de las Naciones Unidas, citada en *Hermina González v. Srio. del Trabajo*, 107 D.P.R. 667, 675 (1978).

(²) En la determinación de hecho Núm. 5 de la sentencia del tribunal de instancia se señaló lo siguiente:

"... [L]a razón del 'despido' fue que la demandante, *siendo una mujer casada, sostenía relaciones amorosas con otro empleado de la empresa, en la misma sucursal, y producto de esa relación la demandante quedó embarazada. La empresa despidió a ambos empleados, entendiendo que esa relación empañaba la imagen de la empresa. ... Por eso fueron despedidos ambos.*" (Énfasis suplido.) Apéndice de la Petición de *certiorari*, pág. 106.

Ley Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. sec. 467 *et seq.*).

La ocurrencia de este tipo de acto delictivo contra el Estado Civil[3] entre dos (2) empleados de las Empresas Massó, le confiere al patrono justa causa para el despido de ambos. Veamos.

## II

La Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b) dispone, en lo pertinente, que "[s]e entenderá por justa causa para el despido de un empleado de un establecimiento: (a) Que el obrero siga un patrón conducta *impropia o desordenada*". (Énfasis suplido.) Aunque la ley hace referencia a "un patrón de conducta impropia" por parte del empleado, esto no es óbice para que el patrono despida justificadamente a un empleado por un sólo acto ofensivo siempre y cuando éste haya sido lo suficientemente grave como para amenazar el orden, la seguridad o el buen funcionamiento del establecimiento y las circunstancias del caso no demuestren que la decisión tomada fue arbitraria o caprichosa. *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 544 (1979).

Tampoco es necesario consignar en un reglamento que la conducta específica en controversia será motivo de destitución inmediata para que el despido sea justificado si la falta u ofensa es de una magnitud considerable, *y su impropiedad es de conocimiento generalizado*, de tal manera que una persona razonable y de inteligencia promedio comprenda la gravedad de la acción y que ésta será inaceptable. A. Acevedo Colom, *Legislación Protectora del Trabajo Comentada*, 4ta ed., San Juan, Ed. Ramallo, 1996, págs. 157–158.

A la luz de lo anteriormente expuesto, debemos conside-

---

[3] Véase el Art. 129 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4147.

rar, pues, si la conducta de la recurrida y del señor Quintana constituye una justa causa para el despido.

## III

Es innegable el eminente interés público orientado a preservar la unidad familiar y a proteger la estabilidad de la institución matrimonial "en virtud de la cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, *y a cumplir el uno para con el otro los deberes que la ley les impone*". (Énfasis suplido.)[4]

En *Pueblo v. Tribunal Superior*, 99 D.P.R. 30, 36 (1970), señalamos que "en nuestra sociedad, y en las sociedades del pasado, ha existido siempre un interés público en la conservación del matrimonio, piedra angular de la familia. Nuestro Código Civil confiere al contrato matrimonial categoría de institución social".[5]

El matrimonio es, después de todo, la "institución fundamental y eje central de nuestra sociedad, [que] continúa siendo la base de la familia y de la vida social".[6] Por otra parte, el Art. 88 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 281, consigna los deberes mínimos con los cuales las parejas se comprometen a cumplir libremente dentro de un matrimonio: "[l]os cónyuges están obligados a

---

[4] Art. 68 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 221.

[5] Véase, además, *Sostre Lacot v. Echlin of P.R., Inc.*, 126 D.P.R. 781, 790 (1990), voto disidente del Juez Asociado Señor Negrón García, en el cual se señala lo siguiente:

"Parecería innecesario esgrimir argumentos en defensa del valor social del *matrimonio*. Basta apuntar que como institución civil claramente establecida y protegida por el orden social y jurídico ocupa un lugar predominante en la sociedad contemporánea que sobrepasa los límites de lo controvertible. (citas omitidas.)

" '[P]or ser instintivamente necesari[a], biológicamente presionante y socialmente imprescindible, la humanidad ha contemplado esas uniones ... con el respeto debido a un acto imprescindible para su propia subsistencia, como el fuego, y la alimentación lo son para la supervivencia individual'. C.M. Estena Klett, *Matrimonio, separación y divorcio en la legislación actual y en la historia*, 2da ed., Pamplona, Ed. Aranzadi (1984), págs. 15–16." (Énfasis en el original.)

[6] R.E. Ortega-Vélez, *Lecciones de Derecho de Familia*, 1ra ed., San Juan, Ed. SCISCO, 1997, pág. 183.

*vivir juntos, guardarse fidelidad y socorrerse mutuamente".*
(Énfasis suplido.) Debido a que el adulterio representa la
más grave violación a dicho deber de fidelidad, el Art. 96(1)
del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 348, lo
dispone como la primera de las causales de divorcio.(⁷)

No obstante, debido a la naturaleza furtiva de las rela-
ciones adúlteras, la prueba presentada por la parte que
solicita el divorcio por esta causal, aunque puede resultar
ser insuficiente para probar los elementos de ésta, en mu-
chos casos "resulta tan persuasiva y convincente que los
tribunales llegan a la conclusión de que la [conducta de un
cónyuge] constituye trato cruel e inhumano y a base de esa
conducta decretan el divorcio". *Olivieri v. Escartín*, 79
D.P.R. 535, 538 (1956). Ello explica el reducido número de
divorcios decretados anualmente por la causal de
adulterio.(⁸)

---

(⁷) Véase R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Ed. U.I.A., 1997, Vol. 1, pág. 533.

(⁸) Serrano Geyls, *op. cit.*, pág. 529. En dicha obra, el profesor Serrano Geyls hace el comentario siguiente sobre la legislación comparada en torno al adulterio:

"En [Estados Unidos] veintisiete estados mantienen la causa de adulterio y siete de ellos añaden la acción de daños por 'enajenación de afectos' *(alienation of affections)*. En Inglaterra, donde existe una sola causa de divorcio (ruptura irrepara-ble en el matrimonio) el adulterio es uno de los cinco hechos que, según la ley, crean la presunción de ruptura pero, además, es necesario que ese hecho le [haga] intole-rable la vida conyugal al demandante. La acción de daños fue abolida en 1970.

Además de las normas establecidas por la jurisprudencia de P.R., ... existen otras importantes respaldadas por la casuística o la doctrina civilista y angloamericana. Son las siguientes: (1) es suficiente que se pruebe un solo acto de adulterio y no se exige estabilidad o frecuencia de las relaciones adulterinas; (2) es necesario probar 'comercio carnal', esto es, la cópula con o sin eyaculación, lo que incluye la sodomía, pero son insuficientes otras intimidades, aunque casos recientes de E.U. resuelven lo contrario; (3) la relación adulterina debe ser voluntaria y no ser el resultado de violencia, intimidación, demencia, inconsciencia o error en la persona, pero ello no incluye la embriaguez, excepto que esta produzca inconsciencia; (4) no hay adulterio cuando el otro cónyuge consiente, facilita o perdona la relación sexual expresa o tácitamente; (5) esa relación debe ser con persona del sexo opuesto —ca-sada o soltera— pero algunos tribunales añaden la relación homosexual o con ani-males; (6) cuando ambos cónyuges son adúlteros, se produce en algunos países la compensación de faltas y se niega el divorcio, pero en otros no es así ...; (7) la enfer-medad venérea de cualquiera de los cónyuges o la concepción de la mujer en ausencia del marido establecen la presunción de adulterio y pueden utilizarse pruebas de sangre del hijo para demostrar que el marido no es el padre; (8) algunos países y autores rechazan la confesión de los cónyuges como única prueba de adulterio; (9)

Mas no podemos olvidar que en nuestra jurisdicción el adulterio es también una conducta delictiva, toda vez que ésta fue tipificada en la última revisión del Código Penal de Puerto Rico. A tenor del Art. 129 de dicho código, 33 L.P.R.A. sec. 4147, el delito de adulterio se configura cuando una persona casada sostiene relaciones sexuales con otra persona que no es su cónyuge. Por otra parte, si como en el caso de autos el delito se comete entre una persona casada y otra soltera, esta última también responde criminalmente y de la misma manera que la persona casada.[9]

El adulterio no sólo constituye una vejación y un atropello a la dignidad del otro cónyuge como ser humano y como esposo o esposa, sino que, además, representa una agresión a la institución social de la familia matrimonial, en la cual el Estado tiene puestas sus esperanzas para la debida formación intelectual y emocional de los hijos. Para que esta ingente tarea se lleve a cabo de forma adecuada, es necesario que exista la más estrecha colaboración entre los padres y los demás miembros allegados al núcleo familiar, por lo que el Estado proscribe —mediante la penalización de la infidelidad conyugal— la conducta adulterina como una gran amenaza a la estabilidad e integridad de la familia.

---

puede existir el adulterio aun cuando los cónyuges vivan separados; (10) salvo disposición legal expresa, ... la relación sexual con un nuevo cónyuge, luego de un divorcio, se considera adulterina sólo si el demandado sabía que el divorcio era nulo al contraer nuevas nupcias, o si obtuvo el divorcio mediante colusión, fraude o mala fe; (11) la inseminación artificial heteróloga sin consentimiento del marido, constituye adulterio según algunos tribunales y autores, aunque otros lo niegan, ... y (12) algunas leyes establecen términos de caducidad de la acción y otras, como la de P.R., no lo hacen." (Escolios omitidos.) Serrano Geyls, *op. cit.*, págs. 537–538

[9] Serrano Geyls, *op. cit.* Sin embargo, la persona no casada que ha sido acusada de cometer este delito puede invocar la defensa de error de hecho si al momento de sostener las relaciones sexuales con la persona casada "se encontraba bajo la creencia razonable de que ésta era soltera". D. Nevares–Muñiz, *Código Penal de Puerto Rico*, 3ra ed. rev., Instituto para el Desarrollo del Derecho, 1995, pág. 214.

# IV

Ceñidos a la controversia ante nos, la naturaleza delictiva del acto adúltero ocurrido entre la recurrida y su compañero de trabajo resalta la gravedad de la falta y subraya su notoriedad, de manera que si un tipo de conducta es lo suficientemente impropia o inaceptable como para que *la sociedad* la considere como constitutiva de delito, tal conducta es igualmente reprochable, impropia y desordenada como para que un patrono pueda razonablemente y con justa causa recurrir al despido de las personas que incurren en ella. Por ello no podemos calificar la destitución de la recurrida como una actuación caprichosa de parte de la gerencia, sino más bien como una medida legítima dirigida a preservar el orden y el buen funcionamiento de la empresa.

Los hechos del caso de marras no sólo demuestran que el señor Massó veía la escandalosa relación como una *mancha inaceptable en la imagen de su empresa familiar*, sino que las manifestaciones del propio señor Quintana previas a su renuncia, reflejan que éste estaba al tanto de cuál iba a ser la consecuencia de sus actos si la gerencia advenía al conocimiento de ellos. Por esta razón, luego de relatarle su relación amorosa con la señora Cruz y solicitarle un traslado a su amigo y jefe Irving de Jesús, gerente de la sucursal de la Playa de Ponce, el señor Quintana le suplicó que no le informara a la alta gerencia acerca de dicha relación. La respuesta del señor De Jesús es también muy reveladora, ya que éste le advirtió que en la eventualidad de que se desenmascarara la verdadera naturaleza de la relación, se vería obligado a notificarlo a la alta gerencia, es decir, al señor Massó.([10]) Por último, resulta evidente que si el señor Quintana y el señor De Jesús claramente conocían lo inaceptable de la relación y las perniciosas consecuencias a

---

([10]) Véase Determinación de Hecho Núm. 3.

las que estaban exponiéndose los compañeros de trabajo, ciertamente también la recurrida conocía o debía conocer la gravedad de la falta debido a que era ella la que incumplía directamente con uno de los deberes que la ley le impone a toda persona casada.[11]

La seriedad de dicha falta, cuya proscripción penal la hace de conocimiento generalizado, acompañado por el claro interés público del Estado en preservar y proteger la institución del matrimonio y de la familia, constituyen una justa causa para el despido.

Por lo antes expuesto, reiteramos nuestra conformidad con la sentencia de este Tribunal mediante la cual se revoca la emitida por el Tribunal de Circuito de Apelaciones y, por ende, se mantiene en vigor la dictada por el tribunal de instancia.

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Asociado Señor Hernández Denton.

Por entender que el dictamen emitido por el Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) es esencialmente correcto, disentimos. A continuación expondremos los hechos pertinentes del caso, según probados ante el foro de instancia, y los fundamentos para nuestro disenso.

I

La demandante Liza Cruz Sinigaglia comenzó a trabajar en las Empresas Massó (en adelante Massó) el 19 de

---

[11] Además, trabajando en el *show room* de la sucursal, la señora Cruz tenía mayor trato con los clientes, por lo que la revelación de su relación adúltera afectaba con mayor intensidad la imagen de la empresa familiar.

agosto de 1990. Específicamente laboraba en el *Show Room* de la sucursal ubicada en la Playa de Ponce. Mientras trabajaba allí, sostuvo una relación amorosa con el Sr. Ismael Quintana Ortiz, empleado de la misma sucursal. Para este tiempo, la señora Cruz Sinigaglia estaba casada con otra persona.

En enero de 1992 la señora Cruz Sinigaglia quedó embarazada del señor Quintana Ortiz. Éste le comunicó al gerente de la sucursal, Sr. Irving De Jesús, lo que estaba ocurriendo. Además, solicitó que lo trasladaran a otra sucursal. Ante esta situación, el señor De Jesús le informó al Director de Recursos Humanos de la empresa, Sr. Nicolás Santana, sobre la relación que sostenían estos empleados.

Según las determinaciones de hecho del Tribunal de Primera Instancia, aparentemente el Director de Recursos Humanos le explicó la situación al dueño de la empresa, Sr. Gildo Massó González.

El 16 de marzo de 1992 el señor Massó González se presentó a la sucursal de la Playa de Ponce y se reunió por separado con el señor Quintana Ortiz y con la señora Cruz Sinigaglia. En estas reuniones, el señor Massó González le pidió la renuncia a cada empleado, dictándoles la respectiva carta.[1]

A consecuencia de lo anterior, la señora Cruz Sinigaglia presentó una demanda contra Massó en el entonces Tribunal Superior de Puerto Rico, Sala de Ponce. Alegó que había sido obligada a renunciar a su trabajo porque había

---

[1] El tribunal de instancia determinó, según la credibilidad que le mereció cada testigo, que el señor Quintana Ortiz y la señora Cruz Sinigaglia fueron despedidos por el señor Massó González, ya que la relación que sostenían dañaba la imagen de la empresa. Específicamente hizo constar lo siguiente:

"El señor Massó [González] requirió la renuncia a la [señora Cruz Sinigaglia], también por el fundamento de que su relación con el [señor] Quintana [Ortiz] dañaba la imagen de la empresa. Aunque la prueba de las partes también fue conflictiva en cuanto al aspecto de la renuncia de la [señora Cruz Sinigaglia], es decir, si fue o no voluntaria, resolvemos a base de la credibilidad que nos merecieron los testimonios sobre ese aspecto, que la renuncia de la [señora Cruz Sinigaglia] fue requerida por el [señor] Massó [González]."

informado que estaba embarazada, lo que "constitu[ía] una violación [al] derecho constitucional que proh[í]be el discrimen por razón de sexo", según el Art. II, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Asimismo, señaló que su despido había sido forzado y no tenía justificación, lo que constituía una "violación a sus derechos constitucionales al discriminar en contra de ella por ser mujer". Solicitó que se le concediera una partida de daños por la cantidad de novecientos cinco mil cuatrocientos ochenta y ocho dólares ($905,488), de acuerdo con la Ley Núm. 100 de 30 de junio de 1959, según enmendada por la Ley Núm. 116 de 20 de diciembre de 1991 (29 L.P.R.A. sec. 146 *et seq.*).

En su sentencia, el foro de instancia determinó —como cuestión de hecho— que no había mediado ningún tipo de discrimen por razón de sexo en el despido de la señora Cruz Sinigaglia. Además, resolvió que el despido no se debió al estado de embarazo de la demandante, sino a la relación amorosa que sostenía con el señor Quintana Ortiz. Consideró la juez de instancia que la demandada Massó había derrotado la presunción que se activa cuando se alega que un despido ocurrió por razón de embarazo, según lo dispone la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. sec. 467 *et seq.*, y lo resuelto en *Rivera Águila v. K-Mart de P.R.*, 123 D.P.R. 599 (1989), ya que se había probado mediante preponderancia de la prueba que el despido se debió a la relación adúltera entre los empleados de la misma sucursal. Por lo tanto, determinó que no procedía ningún tipo de indemnización según esta ley. Asimismo, concluyó que como la señora Cruz Sinigaglia no había invocado la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a *et seq.*, no se podía hacer determinación alguna sobre si procedía conceder algún otro remedio.

Inconforme con esta determinación, la señora Cruz Sinigaglia acudió ante el Tribunal de Circuito, alegando que

el foro de instancia se había equivocado al resolver que no había ocurrido ningún tipo de discrimen por razón de sexo por estar embarazada y al determinar que la demandada Massó había cumplido con su peso de prueba.

Por su parte, el Tribunal de Circuito, en su sentencia de 22 de abril de 1996, determinó que la demandada Massó no había rebatido la presunción que surge en reclamaciones al amparo de la Ley Núm. 3, *supra*, de que el despido de toda mujer embarazada se considera injustificado. Esto se debió a que la prueba del patrono se limitó a intentar probar que la señora Cruz Sinigaglia había renunciado. Por eso concluyó que no se había establecido la justa causa para el despido. En consecuencia, revocó la sentencia del tribunal de instancia y devolvió el caso para que dicho foro determinara cuál era la compensación a la que tenía derecho la señora Cruz Sinigaglia según bajo la Ley Núm. 3, *supra*.

Oportunamente, la demandada Massó recurrió ante nos mediante un recurso de *certiorari*, el cual fue expedido el 1ro de noviembre de 1996. Planteó la comisión de un único error, a saber:

> Erró el Tribunal Apelativo al entender que era aplicable la Ley de Madres Obreras y que no [se] rebati[ó] la presunción que [é]sta alegadamente contiene.

## II

La Ley Núm. 3, *supra*, es una legislación que busca proteger a un sector en específico de la fuerza laboral: la mujer embarazada o que recién ha dado a luz. Esta ley "está encaminada a salvaguardar los derechos de las trabajadoras embarazadas, estableciendo un período de descanso tanto antes como después del alumbramiento, y a prohibir el despido, suspensión, reducción de salario o discrimen de cualquier índole contra la obrera". *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 199 (1988).

En específico, esta ley establece en su Sec. 4 lo siguiente:

> El patrono no podrá, *sin causa justa*, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo. (Énfasis suplido.) 29 L.P.R.A. sec. 469.

Interpretando esta disposición, en *Rivera Águila v. K-Mart de P.R.*, supra, pág. 610, resolvimos que:

> ... una vez entablada una acción por la obrera, mediante la cual reclamó resarcimiento por haber sido despedida de su empleo sin justa causa mientras estaba embarazada, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido. Es al patrono ... a quien le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. El peso de la prueba se desplaza de la parte demandante recurrente hacia el demandado recurrido, y es sobre éste que recae el *onus probandi*. Arts. 2 y 8 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185b y 185h; *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 546 (1979). En reclamaciones al amparo de la Ley Núm. 3, *supra*, surge, pues, una presunción de despido injustificado que el patrono viene obligado a rebatir. Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV. Es al patrono al que le corresponde persuadir al juzgador de la no existencia del hecho presumido: el despido injustificado. *Hawayek v. A.F.F.*, 123 D.P.R. 526 (1989).

Existe una presunción a favor de la obrera embarazada, de que una vez presenta una reclamación al amparo de la Ley Núm. 3, *supra*, su despido fue injustificado y le corresponde al patrono probar la justa causa para éste.

Recientemente, ampliamos esta interpretación en el caso *Soc. de Gananciales v. Centro Gráfico*, 144 D.P.R. 952 (1998). Allí resolvimos específicamente cuándo una empleada puede llevar una acción al amparo de la Ley Núm. 3, *supra*. En lo pertinente, expresamos que el análisis a seguir en este tipo de reclamación no es si el despido estuvo motivado por la condición de embarazo; más bien, hay que determinar si, estando embarazada la empleada,

el patrono la despidió sin causa justificada. *Soc. de Gananciales v. Centro Gráfico*, supra.

Una vez expuesto el derecho pertinente, procede que lo apliquemos a la situación de hechos ante nuestra consideración.

### III

En primer lugar, plantea la demandada Massó que no se le puede conceder remedio alguno a la señora Cruz Sinigaglia al amparo de la Ley Núm. 3, *supra*, porque no invocó su aplicación en la demanda ni en los alegatos sometidos en apelación. No le asiste la razón. Veamos.

Según la Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, "[t]oda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones". Es decir, los tribunales concederán lo que en derecho proceda y no lo que se les solicita. *Marín v. Fastening Systems, Inc.*, 142 D.P.R. 499 (1997); *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 695 (1983). Por otro lado, la demanda sirve para notificar a la parte adversa, a grandes rasgos, de las reclamaciones y defensas que se tienen en su contra. *Rivera Flores v. Cía. ABC*, 138 D.P.R. 1 (1995). Además, véanse: *Moa v. E.L.A.*, 100 D.P.R. 573 (1972); *Sierra v. Tribunal Superior*, 81 D.P.R. 554 (1959). Además, hemos interpretado que la súplica no es parte propiamente de las alegaciones aunque ayuda a interpretarlas. *Moa v. E.L.A.*, supra.

En las alegaciones de su demanda, la señora Cruz Sinigaglia reclamó que había sido obligada a renunciar porque *estaba embarazada* y esto constituía un *despido forzado sin justificación*. Demanda, párrafos 5 y 6. Este lenguaje fue suficiente para notificarle a la demandada Massó sobre la naturaleza de la reclamación y la posible aplicabilidad de la Ley Núm. 3, *supra*, aun cuando no se nombrara es-

pecíficamente según qué ley se estaba ejerciendo la causa de acción.

Sobrepasado este escollo procesal, procede que determinemos, según surge del expediente del caso y de la transcripción de evidencia, si la demandada Massó logró rebatir la presunción de despido injustificado que favorece a la señora Cruz Sinigaglia.

La teoría del patrono Massó fue que no se había despedido a la señora Cruz Sinigaglia, sino que ésta había renunciado. Según el tribunal de instancia, le mereció mayor credibilidad la prueba de la demandante, que establecía que había sido obligada a renunciar.(2) La prueba de la demandada Massó se limitó al testimonio del señor Massó González y al documento titulado "Informe de Maternidad Pagada Durante los Años 1990–91–92". En síntesis, éste declaró que la señora Cruz Sinigaglia le había pedido reunirse con él; que en dicha reunión le solicitó un traslado de sucursal; que como no había plazas disponibles en otras sucursales, ella tomó un papel y escribió allí mismo su carta de renuncia, y que en ese momento no conocía del embarazo de la señora Cruz Sinigaglia. Al foro de instancia no le mereció credibilidad esta versión de los hechos.

Cabe señalar, además, que de este testimonio no surge ni un ápice de evidencia que pueda constituir justa causa para el despido.(3) Erró el tribunal de instancia al resolver que como el patrono había probado mediante preponderan-

---

(2) Es una norma reiterada que las determinaciones de un tribunal de inferior jerarquía no deben ser descartadas o modificadas arbitrariamente ni sustituidas por el criterio del tribunal apelativo en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Mercado, Quilichini v. U.C.P.R.*, 143 D.P.R. 610 (1997); *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600 (1995); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984). Al no existir ninguno de estos elementos en el caso ante nuestra consideración, no debemos descartar o modificar las determinaciones de hecho del foro de instancia.

(3) Según el Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b), en lo pertinente, constituye una justa causa para el despido lo siguiente:

"(a) Que el obrero siga un patrón de conducta impropia o desordenada.

"(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

854

cia de la prueba que el despido no se debió al estado de embarazo de la señora Cruz Sinigaglia, a ésta no la protegía la Ley Núm. 3, *supra*. Estando la señora Cruz Sinigaglia embarazada al momento de su despido y siendo este hecho de conocimiento del patrono, éste no podía despedirla sin una justa causa. Como no se presentó prueba alguna para demostrar que el despido fue justificado, no erró el Tribunal de Circuito al determinar que la Ley Núm. 3, *supra*, y sus remedios aplican al caso de autos.

## IV

Debemos tratar un último punto. En su escrito de *certiorari* la demandada Massó señala parcamente que "si aplicare una presunción [de despido injustificado] de las características expuestas por la sentencia del Tribunal apelativo, la misma sería irrazonable y posiblemente inconstitucional".[4] Aduce que se ha creado una presun-

---

"(c) *Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.*

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

"(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

"(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

*"No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento...."* (Énfasis suplido.)

En el caso de autos, la prueba presentada por la demandada Massó no logró demostrar que las actuaciones de la señora Cruz Sinigaglia podían enmarcarse dentro de alguna de estas categorías. El tribunal de instancia determinó que la verdadera razón del despido fue que la relación que sostenían los empleados dañaba la imagen de la empresa. Massó debió presentar prueba sobre la existencia de alguna política de la empresa que prohíba este tipo de relación, su razonabilidad y el conocimiento de ésta por sus empleados. Al no hacerlo, no refutó la presunción de despido injustificado ni la aplicabilidad de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. sec. 467.

(4) En su argumentación, Massó no señala qué preceptos constitucionales se violan con la adopción de la presunción de despido injustificado para las madres obreras.

ción teóricamente rebatible, pero que en la práctica sería irrebatible en los casos tramitados al amparo de la Ley Núm. 3, *supra*. No tiene razón.

Según explicáramos, la Ley Núm. 3, *supra*, se activa cuando una mujer que está embarazada es despedida de su empleo, y el patrono conoce este hecho. Se establece la presunción, no de que fue despedida por estar embarazada, sino de que el despido fue sin justa causa. Al patrono, entonces, le toca rebatir y establecer que el despido estuvo justificado. Esta presunción no es irrefutable. En realidad, esta ley es análoga a la Ley Núm. 80, *supra*, y por eso se utiliza un análisis similar al resolver controversias relacionadas con éstas. Ambas leyes se distinguen en dos (2) aspectos fundamentales: (1) la compensación dada al empleado despedido y (2) que no constituirá justa causa para el despido de la mujer embarazada el menor rendimiento en el trabajo. Por lo tanto, y tal como la presunción de la Ley Núm. 80, *supra*, no es arbitraria, caprichosa ni irrefutable, tampoco consideramos que la presunción de despido injustificado al amparo de la Ley Núm. 3, *supra*, es irrazonable.

## V

Por los fundamentos antes expuestos, disentimos del curso seguido por la mayoría y confirmaríamos el dictamen del Tribunal de Circuito.