ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| KRYSTAL SALDAÑA RIVERA<br><br>Apelada<br><br>v.<br><br>CENTENO AVILÉS, CORP.; JOSÉ A. CENTENO ROBLES, CARMEN AVILÉS LA SANTA, LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA ENTRE CENTENO ROBLES Y AVILÉS LA SANTA Y ASEGURADORA ABC.<br><br>Apelante | **KLAN202401149** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Fajardo<br><br>Civil Núm. CE2020CV00051<br><br>Sobre: Despido Injustificado, Discrimen por razón de embarazo<br><br>Incoado bajo el Procedimiento Sumario Laboral Dispuesto en la Ley Núm. 2 del 17 de Octubre de 1961 |

Panel integrado por su presidente, el Juez Sánchez Ramos[1], el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2025.

Comparece ante este foro Centeno Avilés, Corp. (la Corporación o "parte apelante") y nos solicita que revisemos una *Sentencia Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, notificada el 17 de diciembre de 2024. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Querella* de epígrafe y concluyó que la Sra. Krystal Saldaña Rivera (señora Saldaña o "la apelada") había despedida injustificadamente y de manera discriminatoria por razón de su embarazo.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia Enmendada* apelada.

---

[1] En virtud de la Orden Administrativa OATA-2021-086, se designó al Hon. Roberto J. Sánchez Ramos.

Número Identificador
SEN2025 _____

## I.

El 24 de junio de 2020, la señora Saldaña presentó una *Querella* contra la Corporación, el Sr. José Centeno Robles (señor Centeno), la señora Carmen Avilés La Santa (señora Avilés) y la Sociedad Legal de Gananciales compuesta por ambos.[2] Posteriormente, el 1 de julio de 2020, la señora Saldaña presentó una *Querella Enmendada* en la cual alegó lo siguiente: (1) que fue despedida el día de su reintegración al puesto de trabajo luego de su receso por maternidad, (2) que tal despido no había sido a causa de una reducción de personal, ya que otras empleadas de menor antigüedad permanecieron en su puesto, y (3) que fue víctima de discrimen por razón de su embarazo.[3]

En respuesta, los apelantes presentaron dos contestaciones a la querella: (1) la Corporación, el 22 de julio de 2020,[4] y (2) el señor Centeno y la señora Avilés, el 23 de julio de 2020. En esencia, ambas partes arguyeron que el despido de la señora Saldaña había sido justificado y no discriminatorio.[5]

Tras la celebración del juicio en su fondo, el 7 de febrero de 2023, el foro primario emitió y notificó una *Sentencia* en la cual concluyó que la señora Saldaña había sido despedida injustificadamente y de manera discriminatoria por razón de su embarazo.[6] Por consiguiente, concedió distintas partidas al amparo de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada,

---

[2] *Querella*, anejo 4, págs. 21-27 del apéndice del recurso del apelante.
[3] *Querella Enmendada*, entrada núm. 5 en el en el Sistema Unificado de manejo y Administración de Casos (SUMAC).
[4] *Contestación a Querella*, anejo 5, págs. 28-38 del apéndice del recurso del apelante.
[5] *Contestación a Querella*, anejo 6, págs. 39-44 del apéndice del recurso del apelante.
[6] *Sentencia*, anejo 7, págs. 45-58 del apéndice del recurso del apelante.

conocida como *Ley sobre Despidos Injustificados,* 29 LPRA sec. 185 *et seq.* (Ley Núm. 80) y la Ley Núm. 3 del 13 de marzo de 1942, según enmendada, conocida como *Ley de Protección de Madres Obreras*, 29 LPRA sec. 467 *et seq.* (Ley Núm. 3).

Ante ello, el 10 de febrero de 2023, la señora Saldaña presentó un *Memorando sobre Costas y Honorarios de Abogado al Amparo de López Vicil v. ITI Intermedia, Inc., 143 DPR 574 (1997) y Ortiz Valle v. Panadería Ricomini, 2022 TSPR 131 (1 nov. 2022),* mediante el cual solicitó que los honorarios de abogados fuesen computados a base de las horas trabajadas.[7]

Aún pendiente de adjudicación el memorando, el 17 de febrero de 2023, la señora Saldaña presentó un recurso de *Apelación Civil* identificado con la codificación alfanumérica KLAN202300136 ante este Foro.[8] Allí, solicitó la modificación de las cuantías establecidas por el foro primario.

El 20 de febrero de 2023, la parte apelante presentó ante el foro apelado una *Solicitud de Reconsideración y Determinaciones de Hechos Adicionales*.[9]

El 21 de febrero de 2023, el foro primario mediante *Orden* declaró *No Ha Lugar* a la solicitud de reconsideración.[10] En la misma fecha, emitió otra *Orden* en la cual expresó que se abstendría de hacer cualquier otra determinación hasta que el recurso de apelación fuera atendido.[11]

---

[7] *Memorando sobre Costas y Honorarios de Abogado al Amparo de López Vicil v. ITI Intermedia, Inc., 143 DPR 574 (1997) y Ortiz Valle v. Panadería Ricomini, 2022 TSPR 131 (1 nov. 2022)*, entrada núm. 113 en SUMAC.
[8] *Moción Informativa sobre Radicación de Apelación Solicitando Modificación de Cuantías*, entrada núm. 116 en SUMAC.
[9] *Solicitud de Reconsideración y Determinación de hechos adicionales*, entrada núm. 119 en SUMAC.
[10] *Orden*, entrada núm. 123 en SUMAC.
[11] *Orden*, entrada núm. 121 en SUMAC.

Así las cosas, el 18 de abril de 2023, este Tribunal de Apelaciones emitió una *Sentencia* desestimando el recurso de *Apelación Civil* por falta de jurisdicción, en vista de que el foro primario no había atendido la solicitud de determinaciones de hechos presentada el 20 de febrero de 2023.

Luego de recibir el *Mandato* de esta curia, 11 de agosto de 2023, el foro primario mediante *Orden* declaró *No Ha Lugar* a la solicitud de revisión de honorarios de abogados y la solicitud de determinaciones de hechos adicionales.[12]

Inconforme, el 21 de agosto de 2023, la señora Saldaña presentó ante este Foro un *Recurso de Apelación* codificado KLAN202300742.[13] En este, solicitó la modificación de las cuantías concedidas por el Tribunal de Primera Instancia.

Así las cosas, el 10 de junio de 2024, este Tribunal emitió una *Sentencia*. Mediante esta, se revocó la sentencia apelada y se devolvió el caso al foro primario para que adjudicara las cuantías de daños que estimara probadas conforme a la legislación laboral más beneficiosa para la señora Saldaña.

Después de recibir el mandato, el 17 de diciembre de 2024, el foro primario notificó la *Sentencia Enmendada*.[14] Concluyó que el despido de la señora Saldaña había sido injustificado y discriminatorio, y que la Ley Núm. 3 era la más beneficiosa. Así pues, concedió las siguientes partidas de compensación: (A) $22,337.67 en daños por despido discriminatorio, (B)

---

[12] *Orden*, entrada núm. 138 de SUMAC.
[13] *Moción Informativa sobre Radicación de Apelación solicitando modificación de cuantía*, entrada núm. 139 de SUMAC.
[14] *Sentencia Enmendada*, anejo 2, págs. 2-18 del apéndice del recurso del apelante.

$22,337.67 de responsabilidad civil al patrono impuesta por referida ley, (3) $11,020.00 de sueldo dejado de percibir, (4) $18,462.50 en costas y honorarios de abogado.

Inconforme, el 26 de diciembre de 2024, la parte apelante presentó el recurso que nos ocupa, en el cual formuló los siguientes señalamientos de error:

> Primer Error: Erró el TPI-Fajardo emitiendo una Sentencia Enmendada sin haber cumplido con lo ordenado por este Tribunal de Apelaciones en el caso KLAN202300136, por lo cual dicha sentencia fue dictada sin jurisdicción.

> Segundo Error: Erró gravemente el TPI-Fajardo cuando aplicando la Regla de Testimonio Adverso contra los tres (3) testigos que no presentó la apelada, por el contrario, le otorgó plena credibilidad a pesar de no haber presentado a la Sra. Aydill Rodríguez a quien insistentemente hizo referencia en su testimonio.

> Tercer Error: Erró gravemente el TPI-Fajardo cuando nunca otorgo credibilidad a ninguno de los testigos que fueron presentados por la apelante, incluyendo el testimonio de la Sra. Agustina Hernández, contadora que corroboró que el despido fue por reducción de ingresos de ventas.

> Cuarto Error: Erró el TPI-Fajardo en la apreciación de la prueba y aplicación del derecho al concluir que el apelante no reservó el puesto a la apelada bajo conclusión errónea de tener a dicho momento trabajando a una empleada a tiempo parcial contrario a la apelada cuya plaza era a tiempo completo.

> Quinto Error: Erró el TPI-Fajardo cuando teniendo ante si los mismos hechos y prueba testificar, por el contrario, ahora adjudica partidas que resultan altamente cuestionables.

> Sexto Error: Erró el TPI-Fajardo al otorgar honorarios de abogado en la suma de $18,462.50 computados a razón de $150.00 la hora, cuando dicha suma por hora resulta excesiva, el monto se distancia de lo concedido en la sentencia original y cuando a pesar de la justificación del TPI-Fajardo, dicha representación legal falló en no citar a tres (3) testigos, en perjuicio de los intereses de la apelada.

El 14 enero de 2025, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto en el Reglamento de este Tribunal, para que presentara su alegato.

El 27 de enero de 2025, la señora Saldaña presentó una *Moción Informativa en Torno a Término para Presentar Alegato en Oposición*.

Mientras que, el 29 de enero de 2025, la Corporación presentó una *Moción Informativa en Relación a Gestiones para Estipular la Transcripción de Juicio y en Solicitud de Término a Dichos Fines*.

Examinado ambos escritos, el 4 de febrero de 2025, emitimos una *Resolución* concediéndole a la parte apelante diez (10) días a partir de la notificación de esta *Resolución*, para que presentara la transcripción de la prueba oral debidamente estipulada.

A esos efectos, el 18 de febrero de 2025, las partes de manera conjunta presentaron una *Moción Sometiendo Transcripción Estipulada de la Prueba Oral*.

El 10 de marzo de 2025, la Corporación presentó un *Alegato Suplementario*.

Por su parte, el 14 de abril de 2025, la señora Saldaña presentó un *Alegato en Oposición a Apelación*.

Con el beneficio de la comparecencia de ambas partes procedemos a disponer del recurso de epígrafe.

**II.**

**-A-**

Nuestro ordenamiento jurídico no prohíbe absolutamente el despido de un empleado, sino que castiga el despido sin justa causa. *Rivera Figueroa v. The Fuller Brush Co*, 180 DPR 894 (2011).

Por un lado, la Ley Núm. 80, *supra,* regula las circunstancias en que un patrono privado puede despedir a un empleado. La referida ley es una legislación reparadora, por lo cual hay que interpretarla liberalmente a favor de los derechos del trabajador. *Irizarry v. J & J Cons. Prods. Co., Inc.,* 150 DPR 155, 164 (2000).

En su Artículo 1, la Ley Núm. 80, *supra*, establece que todo empleado de comercio, industria o cualquier otro negocio que sea contratado sin tiempo determinado, pero con remuneración y fuere despedido de su cargo sin causa justa, tendrá derecho a recibir de su patrono una indemnización como remedio exclusivo. Esta compensación se conoce como la mesada y su cuantía dependerá del tiempo que el empleado ocupó su puesto y del sueldo que devengaba. *Íd.*

Además, el Artículo 2 de la Ley Núm. 80, *supra,* define "justa causa" como "aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono." En lo aquí pertinente, dicho artículo expone una lista no taxativa de causas justificadas para el despido que lee como sigue:

        a) […]
        b) […]
        c) […]
        d) […]
        e) […]
        f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA sec. 185b.

Sin embargo, el Tribunal Supremo de Puerto Rico expresó que la disposición anterior aplicará únicamente a aquellas situaciones en las cuales la aludida

disminución sea una sustancial al punto que atente contra la continuidad, estabilidad y solvencia económica del negocio. *Zapata v. J.F. Montalvo*, 189 DPR 414, 426-427 (2013). Además, el patrono deberá retener a aquellos empleados con mayor antigüedad en la clasificación ocupacional en la cual se dispone a efectuar los despidos, siempre y cuando subsistan puestos vacantes u ocupados por empleados con menor antigüedad. 29 LPRA sec. 185c. Véase, además: *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586 (2013).

De acuerdo con la Ley Núm. 80*, supra,* se presume que todo despido es injustificado a menos que responda a las excepciones provistas en el Artículo 2 de la referida ley. 29 LPRA sec. 185b. Además, dicha presunción debe ser rebatida por el patrono mediante preponderancia de la prueba, es decir, demostrar lo contrario, por ello, que hubo justa causa. *Orsini v. Srio de Hacienda*, 177 DPR 596 (2009).

Por otro lado, la Ley Núm. 3, *supra*, garantiza mayor protección a la mujer obrera contra el discrimen en el trabajo por razón de sexo. *Rivera Águila v. K-Mart de PR*, 123 DPR 599, 609 (1989).

Nuestro Tribunal Supremo dispuso en *Soc. de Gananciales v. Centro Gráfico*, 144 DPR 952, 960 (1998), que "[e]l requisito esencial para la aplicación de la Ley Núm. 3, *supra*, es que la mujer haya sido despedida durante su embarazo; ante ese hecho, le corresponde a la parte demandada el peso de probar que había *justa causa* … para terminar la relación obrero-patronal".

Así pues, la Ley Núm. 3, *supra*, establece una presunción de despido injustificado, la cual impone sobre el patrono el peso de establecer que existieron

razones justificadas para el despido de la empleada, independientes al embarazo. *López Fantauzzi v. 100% Natural*, 181 DPR 92, 116-117. Es decir, es al patrono al que le corresponde persuadir al juzgador de la inexistencia del hecho presumido. *Íd.*

Por otro lado, si el patrono no lograr refutar dicha presunción de despido injustificado, la Ley Núm. 3, *supra*, le impone a este ciertas sanciones, tanto civiles y criminales, que le brindan mayor protección a la madre obrera injustamente despedida. Específicamente sobre sanciones civiles, la sección 4 de la Ley Núm. 3, *supra*, establece lo siguiente:

> a) Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento ..., incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños causados a la trabajadora, o por una suma no menor de mil dólares ($1,000) ni mayor de cinco mil dólares ($5,000) a discreción del tribunal si no se pudieran determinar daños pecuniarios o el doble de estos, si montaran a una suma menor de mil dólares ($1,000). La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta sección. 29 LPRA sec. 469.

De acuerdo con lo anterior, en una acción entablada bajo la Ley Núm. 3, *supra*, el patrono responde en daños si despide, sin justa causa, a una mujer embarazada. *Rivera Águila v. K-Mart de PR*, *supra,* pág. 609. Es decir, el requisito esencial es que la mujer obrera haya sido despedida durante su embarazo; y no si el despido fue motivado por la condición de embarazo. *Soc. de Gananciales v. Centro Gráfico*, 144 DPR 952 (1998).

En cuando a la indemnización, nuestro más Alto Foro ha expresado que no se puede conceder indemnización bajo ambas leyes, la Ley Núm. 80, *supra,* y la Ley Núm. 3, *supra*, pues se estaría penalizando al patrono dos veces por el mismo acto de despido injustificado. A tales fines ha expresado que:

> El conceder una indemnización bajo las dos (2) leyes en cuestión penalizaría al patrono por un mismo acto —el despido injustificado. En estos casos, el tribunal de instancia concederá el remedio que proceda bajo una u otra ley, a base de lo que sea más beneficioso para la trabajadora, según la prueba, pero la concesión de indemnización bajo la Ley Núm. 3, supra, excluirá la concesión de indemnización bajo la Ley Núm. 80, y lo mismo ocurrirá a la inversa. *Soc. de Gananciales v. Centro Gráfico* 144 DPR 952, 965 (1998).

Por lo tanto, se deberá conceder el remedio que sea más beneficioso para el empleado y la concesión de indemnización al amparo de una de las leyes, excluye la indemnización al amparo de la otra, y a la inversa. *Íd*.

**–B–**

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Así, como foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el Tribunal de Primera Instancia, cuando el foro primario actúe con pasión, prejuicio, parcialidad, o incurra en un error manifiesto al aquilatarla. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011); *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

Además, se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando su apreciación se distancia "de la realidad fáctica o ésta [es] inherentemente imposible o increíble." *González Hernández v. González Hernández*, supra, pág. 777; *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, supra.

-C-

En reiteradas ocasiones, nuestro Tribunal Supremo ha expresado que, en las acciones de daños y perjuicios, la estimación y valoración de daños es una tarea difícil y angustiosa, dado que "no existe un sistema de

computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas." *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 909 (2012).

Por tal razón, los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros de primera instancia, debido a que estos son los que tienen contacto directo con la prueba testifical y están en mejor posición para emitir un dictamen. *Rodríguez et al. v. Hospital et al.*, supra. Ahora bien, los tribunales apelativos intervendrán con las estimaciones de daños realizadas por el Tribunal de Primera Instancia cuando la cuantía concedida sea exageradamente alta o ridículamente baja. *Íd*. Véase, además, *Herrera, Rivera v. SLG Ramírez-Vicéns*, 179 DPR 774, 787 (2010); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509-510 (2009).

Por otro lado, el ejercicio de valoración de daños conlleva cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Santiago Montañez v. Fresenius Medical*, supra. Además, no existen dos casos idénticos, debido a que cada uno tiene sus circunstancias particulares. *Íd*.

Por tanto, al comparar las cuantías concedidas en casos previos, hay que ajustarlas al valor presente. *Santiago Montañez v. Fresenius Medical*, supra; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013); *Rodríguez et al. v. Hospital et al.*, supra; *Herrera, Rivera v. SLG Ramírez Vicéns*, supra.

En *Santiago Montañez v. Fresenius Medical*, supra, nuestro Tribunal Supremo advirtió a los jueces del Tribunal de Primera Instancia respecto a la importancia de detallar específicamente en los dictámenes los casos similares utilizados como referencia o punto de partida para la estimación y valoración de daños, y el cómputo realizado para establecer las cuantías que se concedan. Esto, debido a que las compensaciones otorgadas en casos previos constituyen un punto de partida y referencia útil para que los tribunales apelativos puedan pasar juicio sobre las concesiones otorgadas por el foro primario. *Íd.*

**-D-**

La Regla 44.1(A) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 44.1, faculta a los tribunales a imponer el pago de una cuantía en concepto de costas. Al respecto, la referida disposición establece lo siguiente:

> Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su dirección, estima que una parte litigante debe reembolsar a otra.

Por otro lado, los honorarios de abogados en pleitos laborales no pueden ser cobrados al empleado debido a que equivale a reducir el valor de la indemnización del obrero y ello violenten la política pública de proteger a los trabajadores y empleados. *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 295 (2011).

De ordinario, para que un tribunal imponga honorarios de abogados deben concurrir los siguientes

requisitos: "(1) un empleado haga una reclamación a su empleador, (2) la reclamación surja al amparo de la legislación laboral, (3) el empleador sea un "patrono" bajo la ley y (4) se conceda la reclamación." *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.,* 204 DPR 183, 213 (2020). Como cuestión de umbral, la partida de los honorarios de abogados por las gestiones realizadas en la tramitación de un pleito laboral será a base de un por ciento de la indemnización concedida al empleado.

En ese sentido la Ley Núm. 80 en su Artículo 11(b) detalla específicamente que:

> En todo pleito fundado en esta ley, el tribunal celebrará una conferencia con anterioridad al juicio no más tarde de treinta (30) días después de contestada la demanda. Terminada dicha conferencia, si en su criterio hubiere razones suficientes, más allá de las circunstancias de existirá legaciones conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de quince (15) días, el patrono demandado deposite en la secretaría del tribunal una suma equivalente a la compensación total a la cual tendría derecho el empleado, y además, una cantidad para honorarios de abogado que nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que fuere mayor. 29 LPRA sec. 185k.

Mientras que la Ley Núm. 3 en su Sección 7 establece que particularmente que:

> En caso de que la reclamación fuere declarada con lugar, en la sentencia se ordenará al patrono que conceda el período de descanso o la licencia de maternidad por adopción a que la querellante tuviere derecho, o a que le pague el sueldo, salario, jornal o compensación correspondiente, según fuere el caso, más una suma razonable para costas, gastos y honorarios de abogado. 29 LPRA sec. 472.

Aunque la legislación anterior no establece con especificidad el porcentaje para la partida de honorarios de abogados, el Tribunal Supremo de Puerto

Rico ha estimado que el 25% es una remuneración razonable para el abogado del trabajador querellante. Por ejemplo, en el contexto de la Ley Núm. 100*, supra,* el Alto Foro expresó:

> Entendemos que estimar los honorarios de abogados en veinticinco por ciento (25%) de la indemnización base, en este tipo de caso, permite que los trabajadores vindiquen sus derechos, a la vez que se compensa justamente a los abogados que invierten su trabajo y esfuerzo en este tipo de reclamación. *López Vicil v. ITT Intermedia, Inc.,* 143 DPR 574, 583 (1997).

Posteriormente, nuestro Tribunal Supremo destacó las siguientes expresiones realizadas en López Vicil v. ITT Intermedia, Inc., *supra*:

> [E]n ausencia de una disposición legal que cuantificara numéricamente la razonabilidad de los honorarios en las reclamaciones presentadas al amparo de la legislación laboral, se dispuso que la cuantía que le corresponde al abogado del demandante es equivalente al 25% de la indemnización básica que finalmente se determine […]. *S.L.G. Afanador v. Roger Electric Co., Inc.,* 156 DPR 651, 672 (2002).

**III.**

Mediante sus seis señalamientos de error, la parte apelante nos solicita la revisión de la *Sentencia Enmendada* notificada el 17 de diciembre de 2024.

En su primer señalamiento de error, la Corporación alega que el foro primario emitió la *Sentencia Enmendada* sin haber cumplido con lo ordenado en el caso KLAN202300136, al no atender la solicitud de determinaciones de hechos adicionales que presentaron el 20 de febrero de 2023. Por tanto, sostiene que dicha sentencia fue dictada sin jurisdicción.

En cuanto al segundo, tercer y cuarto señalamiento de error, la Corporación los discute en conjunto dado que parten de la apreciación de la prueba. En esencia,

aduce que el despido de la señora Saldaña fue justificado. Sostiene que, conforme al testimonio de la Sra. Agustina Hernández, contable de la parte apelante, el cese de las labores de la apelada fue a causa de una merma de ventas en el área del piso de la farmacia y que esto no había sido refutado.

No obstante, esboza que el foro primario le otorgó credibilidad al testimonio de la señora Saldaña y no a los testigos de la Corporación, a pesar de que la apelada no presentó a tres de sus testigos anunciados, por lo que, sus testimonios se presumen adversos. Finalmente, añade que, distinto a lo determinado por el foro primario, el puesto no podían reservarlo, debido a la disminución de ingresos.

Sobre el quinto señalamiento error, señala que el foro primario teniendo ante si los mismos hechos y prueba testimonial, adjudicó partidas altamente cuestionables. Alega que, en la sentencia original concedió una suma de $17,937.51, sin embargo, en la sentencia enmendada adjudicó una suma de $74,217.84. Sostiene que, dicho aumento es mayor a cuadriplicar la cantidad originalmente concedida y representa un abuso de discreción.

Por último, en su sexto señalamiento de error, alega que el foro apelado incidió al otorgar honorarios de abogado por la suma de $18,462.50 computados a razón de $150.00 la hora. Indica que, dicha suma por hora resulta excesiva y que se distancia del monto concedido en la sentencia original, más aún cuando la representación legal falló en citar a tres de los testigos anunciados.

Examinados los autos que obran en SUMAC, encontramos que el foro primario atendió la solicitud de determinaciones de hechos adicionales que presentó la Corporación el 20 de febrero de 2023, además de la *Moción con relación a Solicitud de Honorarios de Abogados y en Solicitud de Adjudicación de Moción de Hechos Adicionales de la Parte Querellada*.[15] A tales efectos, el foro primario mediante *Orden* dispuso lo siguiente:

> A la solicitud de revisión de honorarios de abogados: NO HA LUGAR.
>
> A la solicitud de determinaciones de hechos adicionales: NO HA LUGAR.[16]

Por lo cual, el foro primario cumplió con el mandato de este Tribunal y tenía jurisdicción para emitir la sentencia enmendada.

En cuanto al segundo, tercer y cuarto señalamiento de error, es necesario recalcar que los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, supra. No obstante, esta deferencia judicial no es de carácter absoluto, pues debe ceder cuando las determinaciones de hechos no están sustentadas por la prueba desfilada o cuando el foro primario haya actuado con pasión, prejuicio, parcialidad o incurra en un error manifiesto. *González Hernández v. González Hernández*, supra.

De una lectura de la transcripción de la prueba oral, así como del expediente ante nuestra consideración, concluimos que las determinaciones de

---

[15] *Moción con relación a Solicitud de Honorarios de Abogado y en Solicitud de Adjudicación de Moción de Determinaciones de Hechos adicionales de la Parte Querellada*, entrada núm. 137 de SUMAC.
[16] *Orden*, entrada núm. 138 de SUMAC.

hechos consignadas en la sentencia enmendada están sustentadas por la prueba desfilada. De igual forma, no encontramos que el foro primario haya actuado con pasión, prejuicio, parcialidad o haya incurrido en un error manifiesto.

Dicho lo anterior, surge del testimonio del señor Centeno que, la señora Saldaña tras culminar su descanso de maternidad postnatal fue despedida el día que intentó reintegrarse a su puesto.[17] A su vez, intentó justificar el despido por disminución de ventas en el área del piso.[18] No obstante, afirmó que la Sra. Aydill Rodríguez, empleada de menor antigüedad a la apelada, continuó ejerciendo el puesto de la señora Saldaña luego del despido.[19]

De otra parte, la señora Hernández testificó que aun cuando las ventas del piso habían disminuido, el total de ventas del negocio aumentó. Indicó que, para el año 2018 habían sido de $1,972,292.00 y para el año 2019 fue de $2,651,958.00, lo que corresponde a un aumento de sobre $600,000.00.[20] Asimismo, afirmó que para el año 2015 hasta el año 2019, el ingreso bruto ajustado y el ingreso neto, sujeto a contribuciones aumentó año tras año.[21]

Según establece la Ley Núm. 3, *supra*, el patrono está obligado a reservar el empleo a la obrera embarazada, durante el periodo de descanso. Asimismo, dispone que el patrono no puede, sin justa causa, despedir a la mujer embarazada. "No se entenderá que es

---

[17] *Transcripción de Prueba Oral*, pág. 23.
[18] *Transcripción de Prueba Oral*, págs. 23, 34-35.
[19] *Transcripción de Prueba Oral*, págs. 35-37.
[20] *Transcripción de Prueba Oral*, pág. 111.
[21] *Transcripción de Prueba Oral*, pág. 112.

justa causa el menor rendimiento para el trabajo, en razón del embarazo." Secc. 4 de la Ley Núm. 3, *supra*.

Así pues, concluimos que la Corporación incumplió con reservar el empleo de la señora Saldaña, bajo el pretexto de que las ventas del piso habían disminuido. Por lo que, no logró rebatir la presunción de despido injustificado de una mujer embarazada a tenor con la Ley Núm. 3, *supra*.

Sobre el quinto señalamiento de error, es norma reiterada que los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros primarios, toda vez que son los que tienen contacto directo con la prueba. *Rodríguez et al. v. Hospital et al.*, *supra*. Aun así, los foros revisores intervendrán con las estimaciones de daños cuando las cuantías concedidas sean exageradamente altas o ridículamente bajas. *Íd*.

Tras evaluar detalladamente el dictamen apelado, consideramos que no debemos intervenir con la adjudicación de las partidas realizadas por el foro primario. Las partidas concedidas fueron sostenidas por la prueba. Además, conforme al derecho aplicable, el foro primario utilizó el caso KLAN201501173 como punto de partida para su estimación y valoración de daños.

Por último, en cuanto a los honorarios de abogado, nuestro Máximo Foro ha expresado que "cuando el esfuerzo de la representación legal lo justifica, se puede solicitar que estos se computen por horas trabajadas". *Ortiz Valle v. Panadería Ricomini*, 210 DPR 831 (2022). A su vez, esta concesión de honorarios recae en la sana discreción del foro *a quo*. *Íd*.

Por ello, evaluados los argumentos de las partes, así como los autos que obran en el expediente, determinamos que el foro primario no abusó de su discreción al conceder la partida determinada de honorarios de abogado. Reconocemos que en la litigación laboral los tribunales generalmente otorgan honorarios al obrero victorioso en un 25% de la sentencia, mas en este caso la suma total otorgada es razonable tomando en consideración lo extenso de todo el proceso judicial, incluyendo los recursos apelativos.

Así pues, concluimos que el foro primario no cometió los errores señalados por la parte apelante en el recurso que nos ocupa.

## IV.

Por los fundamentos antes expuestos, **CONFIRMAMOS** el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones